Argued October 29, decided November 26, 1912; rehearing denied March 11, 1913.

## MOORE v. UNITED ELKHORN MINES.

(127 Pac. 964.)
(130 Pac. 640.)

**Waters—Public Water Supply—Water Power—Loss of Title by Nonuser—"Ditch"—"Aqueduct"—"Flumes."**

1. Section 5136, L. O. L., provides that the owner of a "ditch or mining flume, or water right appurtenant thereto," who fails to operate or exercise ownership over such property for a period of five years shall lose the title, claim, and interest therein, etc. Held that, as a "ditch" is an "aqueduct," which is a water carrier or leader, and "flumes" are usually portions of ditches, a reservoir is not included within the statutory provisions; and nonuser thereof for the period named would forfeit no right.

**Waters—Public Water Supply—Water Power—"Abandonment."**

2. An "abandonment" is an intentional relinquishment of a known right, the intention to be ascertained from the conduct

and declarations of the party in respect thereto; and there was no abandonment of a reservoir and water right appurtenant thereto, though the owner gave up its domicile in the State, and there was a nonuser for a period of 10 years, where, before it left the State, it executed a mortgage on the property, and the mortgagee foreclosed and had a sale after its departure, as there was no intention of the mortgagee to abandon; and the mortgagor, by his failure to pay the license fees, etc., could not defeat the mortgagee's interest.

#### Waters—Appropriation—Action to Establish Right.

3. Where defendants lawfully built a reservoir on government land, which plaintiffs subsequently, without any permission from the government, took possession of, irrespective of any question of nonuser of a water right by defendants, plaintiffs' title would not be quieted because they had no title, and equity would not lend its aid to enable them to acquire property constructed by another.

From Baker: WILLIAM SMITH, Judge.

This is a suit by C. A. Moore and L. L. Foster against the United Elkhorn Mines, a corporation, Edward E. McCoy, Trustee, W. J. Patterson, Clifford L. Tice, W. A. Pope, J. T. Donnelly, Trustee, and William Pollman. From a decree dismissing the suit, plaintiffs appeal.

AFFIRMED.

For appellants there was a brief and an oral argument by *Charles A. Moore.*

For respondent there was a brief and an oral argument by *Mr. Charles A. Johns.*

.. MR. JUSTICE McBRIDE delivered the opinion of the court.

The circuit judge filed a written opinion upon the merits of this case, and, subsequently, a supplementary opinion, which so clearly state the issues involved and the general principles of law applicable thereto that, without committing ourselves to certain expressions therein contained, we adopt it as the opinion of this court.   The

opinion in chief and the one rendered upon rehearing are as follows:

"This is a suit to quiet title to a certain reservoir, which plaintiffs claim under location and appropriation, with the permission, or a "permit," from the State Engineer, dated December 29, 1909.

"The defendant Edward E. McCoy and United Elkhorn Mines answer, the other defendants having defaulted, and, after denying the allegations in the complaint, except the incorporation of the United Elkhorn Mines and the assertion and claim of interest by defendants in the reservoir and the waters thereof, which they admit, plead (1) ownership in the United Elkhorn Mines and the actual and exclusive possession thereof in itself and its predecessors in interest since 1884, the year of the construction of said reservoir, and of its water rights; (2) custom in vogue in 1884, under and by virtue of which appropriation and impounding of the waters of Pine Creek were effected by construction of said reservoir, and use and possession of the same thereunder ever since. On motion of plaintiffs, the said second defense was stricken out as redundant.

"The reply of plaintiffs denies the new matter in the answer, saving that setting up the incorporation of the United Elkhorn Mines, and by way of separate reply alleges that the reservoir in question is located upon the public domain; that said corporation, on January 23, 1908, removed from the State, with intent and purpose of changing its residence, and ever since said date has remained absent from the State, and has not used or exercised ownership over the reservoir or water and water rights described in the complaint; and that said corporation has not, nor have its predecessors in interest, operated or exercised any ownership over said reservoir, water, or water rights since the summer of 1895.

"Upon the trial two stipulations of facts were made and filed herein which are to be considered in connection herewith. The said stipulations show that the United Elkhorn Mines owned the reservoir on January 1, 1904, and at that time executed a mortgage thereon to Edward E. McCoy, as trustee for the bondholders; that it was duly recorded on January 20, 1904, in Baker County, Oregon, and that the bonds had been sold for their actual

value; that, the United Elkhorn Mines failing to pay the bonded debt, the said trustee began suit in this court, obtained decree of foreclosure about October, 1909, and judgment in the sum of $250,000 and interest, with costs, and that under and by said decree said reservoir, with other property, was ordered sold to satisfy said judgment; that the said sale resulted in the purchase of the said reservoir by J. T. Donnelly, as trustee for the bondholders; that said sale was duly confirmed by this court about May 9, 1910, and that thereafter, there having been no redemption, the said purchaser received his sheriff's deed thereto; that on September 5, 1911, the said trustee, J. T. Donnelly, sold said property, for a valuable consideration, to William Pollman; and that such title as said Donnelly theretofore had is now in said Pollman.

"In the year 1909, and upon the 29th day of December thereof, the plaintiffs made application to the State of Oregon for a permit to construct a reservoir and to store for beneficial use the unappropriated waters of the State of Oregon, to wit, the waters of Pine Creek, in Baker County, Oregon, and on said date the State Engineer allowed said application. Thereupon the plaintiffs went in and upon the said reservoir, hereinbefore referred to as a portion of the mortgaged property purchased by said Donnelly at execution sale, as trustee for the bondholders, and by him sold, as such trustee, to said Pollman, repaired the penstock, straightened up the lifting rod controlling the trunk gate thereof, and expended some two or three hundred dollars thereon. Thereupon they bring this suit to quiet title thereto, and, as it appears that the defendants Tice, Patterson, and Pope are in default, and that the United Elkhorn Mines is delinquent to the State for the nonpayment of dues as required by act of 1903, the cause proceeds as to said Pollman, who was later brought into the suit as a party defendant on motion of the plaintiffs, and this court adjudicates the rights of plaintiffs and the said last-named defendant.

"Counsel for plaintiffs contend that by reason of the fact that said reservoir has not been operated during the five years next preceding their location, if it may be called that, of the reservoir · in question, the rights of the former owners have been extinguished under the act of 1898, to wit, Section 5136, L. O. L. Plaintiffs also contend that the defendants have abandoned the works, and

it is upon these two issues that this cause is to be determined.

"Originally the reservoir in question formed a part of the water supply of the Nelson Mining Company, and was used to impound the excess waters of Pine Creek when the same were not required by the ranchers below, whose rights as appropriators and riparian proprietors were respected by that company. For some reason that company sold this reservoir, with the right to impound those waters, to the United Elkhorn Mines Company, through *mesne* conveyances, and the defendant Pollman succeeds to those rights. The waters of this reservoir had formerly been conducted through the Newton-Sturgill ditch to the Nelson placer mine; but after the sale the reservoir was cut off from that ditch and became the property of Pollman, as above stated.

"It is shown by the evidence that the waters from this reservoir were not used during the five years next prior to the commencement of plaintiffs' suit; nor were waters stored therein, owing to the defective condition of the trunk gate and the impossibility of using it, raising and lowering it. The dam and spillway remained practically intact, and the reservoir was in fairly good condition and usable otherwise. The owners paid taxes on this reservoir up to and including the year 1906, and J. T. Donnelly afterwards, while trustee, paid the taxes for the years 1907 and 1908; but it was not assessed for the years 1909 and 1910, owing to inaction by the county assessor.

"On the 12th day of April, 1910, the bondholders entered into an agreement for the sale of the property of the United Elkhorn Mines Company by F. P. Hays under certain conditions, and, if those conditions failed, then the sale was to be made by said trustee, Donnelly, for and on behalf of said bondholders, whose mortgage had been foreclosed upon the said property, as hereinbefore stated.

"It will be noted that this reservoir was cut off, as is above stated, from the original Nelson placer mine plant and the purpose for which it was constructed, to wit, to store water for use in that mine, by the sale thereof to Hays as agent for the Beaver, afterwards the United Elkhorn Mines Company, to whose interests defendant Pollman succeeds.

"There are two questions to be dtermined: (1) Has the defendant lost 'all title, claim and interest' in the reservoir by reason of its nonoperation for a period of five years? and (2) was the reservoir abandoned property at the time plaintiffs took it up? If either of these questions must be answered in the affirmative, plaintiffs must prevail; but if either must be answered in the negative they cannot prevail. We will consider them in their order.

1. "First. Has the defendant lost 'all title, claim and interest' by reason of its nonoperation of the reservoir for a period of five years? This question must be determined by construction of Section 5136 of our present Code, and a consideration of the history of that section will aid us. Originally that section read thus: 'That ditches used for mining purposes and mining flumes permanently affixed to the soil be and the same are hereby declared real estate during the time the same shall be used for that purpose; *provided,* that whenever any person. company, or corporation, being the owner or proprietor of any ditch, flume, or water right, have or shall abandon the same, and who shall for one year thereafter cease to exercise ownership over said water right, ditch, or flume, * * shall be deemed to have lost all title, claim, and interest therein.' We note that there is no provision in the old section relating to nonoperation of the ditch, etc. The construction put upon the old law by our courts confines the loss of ownership to willful abandonment and excludes all other contingencies, and such is the patent intent of that act. See the Dodge-Marden Case (7 Or. 456). Water rights for mining and other purposes could not, under that old section, be lost by nonuser alone, short of the period prescribed in Section 4 of Hill's, B. & C. and Lord's Code; the number remaining unchanged. The old section was based upon abandonment only. There was no provision, as is above remarked, or reference, to failure to operate; but the reference is to abandon only. 'Whenever a person shall abandon the same' is the text of the old statute. Hence, under the old statute, and as it remained until 1898, when the amendment was made (Sess. Laws 1898, p. 16), the question of operation or non-operation of the ditch, flume, or water right was wholly immaterial.

"The amendment was made in 1898, and the new or amended section reads as follows (see Laws 1898, p. 18): 'Ditches and mining flumes, permanently affixed to the soil, are hereby declared to be real estate; *provided,* that whenever any person, company, or corporation, being the owner of any such ditch, flume, and the water right appurtenant thereto, shall cease to operate or exercise ownership over said ditch, flume, or water right, for a period of five years, and every person, company, or corporation who shall remove from this State with the intent or purpose to change his or its residence, and shall remain absent one year without using or exercising ownership over such ditch, flume, or water right, shall be deemed to have lost all title, claim, and interest therein.'

"We note that the law now is 'that whenever * * the owner of * * ditch, flume, and the water right appurtentant thereto, shall cease to operate * * said ditch, flume, or water right [that is the water right appurtenant to such ditch or flume], for a period of five years, * * [he] shall be deemed to have lost all title, claim, or interest therein.' Section 5136, L. O. L. (Laws 1898, p. 18, § 9).

"A ditch is an aqueduct, and flumes are usually portions of ditches. An aqueduct is a water carrier—a water leader, to be more exact. The law applies to water leaders in all forms, whether of earth or planks; to ditches and flumes, and the water rights that are 'appurtenant thereto'—appurtenant to such ditches and flumes. Nonuser of the ditch or flume for five years forfeits the title thereto, and also forfeits the title to the water right appurtenant thereto. The question in this case is: Has defendant lost his title in the reservoir by reason of nonuse thereof for five years? In other words, does Section 9 of the act of October 14, 1898, relate to reservoirs? Certainly it is immaterial whether or not the Nelson placer mine has been operated during that time, or whether or not water has been run from the reservoir through the ditches of that stranger to the title to the reservoir during that time. The reservoir was sold by that company, and what it has done since that sale affects matters in no wise here. If the reservoir were appurtenant to the Nelson mine ditches, nonuser of those

ditches might compel consideration; otherwise not. But the sale severed the reservoir from any fate that might come to that ditch or those ditches. The complaint of the plaintiffs is that the reservoir has not been used. '* * And plaintiffs further allege that said defendant corporation (United Elkhorn Mines) has not, nor had its predecessors in interest, operated or exercised any ownership over said reservoir, water, or water rights since the summer of 1895.' By water rights is meant the rights appurtenant to the reservoir. See deed to Hays. The reservoir is the bone of contention; and if it be claimed that the deeds conveying the reservoir also mention ditches, and that therefore the reservoir is appurtenant to those or some of those ditches, and that failure to operate those ditches loses title to the reservoir, then plaintiffs are in no better position, as they do not claim those ditches, but are contending for 'a certain reservoir, * * together with the right to appropriate a sufficient quantity of water of Pine Creek to fill said reservoir, * * and the right to store the water so appropriated in said reservoir, to be used for irrigation and domestic purposes,' to use the words of their complaint. It cannot be claimed by any one that the reservoir is an appurtenant to anything; but it is the subject-matter of this suit. The right to store water in it is the main claim of right by all parties to this suit. So the question is pertinent, and must be answered: Does the amended statute relate to reservoirs? Does it relate to the right to store water? Does a statute which reads, 'whenever any person, * * being the owner of any such ditch, flume, and the water right appurtenant thereto, shall cease to operate * * said ditch, flume, or water right for a period of five years, * * [he] shall be deemed to have lost all title, claim and interest therein,' mean that whenever the owner of a reservoir shall cease to operate the same for five years he shall lose title thereto? The answer must be in the negative. Under the old statute, voluntary abandonment followed by one year's nonuser extinguished title to the ditch or to a water right. Under the new, five years' nonuser loses the ditch with its appurtenant water right; but there is a marked distinction between a ditch and a reservoir, and a liberal construction of the new statute, were it permissible, could not make the new act apply to

reservoirs. If it could, it would be upon the theory that the reservoir is appurtenant to some ditch or flume; while, on the contrary, the right to store water in this reservoir is the desideratum of all parties here and the basis of this suit. All other matters are secondary—ditches, flumes, or other means or appliances to make the reservoir serve the purpose in the mind of its constructors and of its owners, whosoever they may be. Hence we conclude that Section 5136, L. O. L., does not apply to reservoirs, and the answer to the first question above set forth must be in the negative. The defendant has not lost title, claim, or interest in the reservoir by reason of the fact that water has not been stored therein during the past five years.

2. "Now upon the remaining question, to wit: Was there an abandonment of the reservoir at the time the plaintiffs sought to appropriate it? In order to constitute abandonment, there must have been 'an intentional relinquishment of a known right.' Again, 'the intention of the party (owning the reservoir) must govern in determining whether he has abandoned his right, such intention to be ascertained from his conduct and declarations in respect thereto.' *Oviatt* v. *Big Four Min. Co.*, 39 Or. p. 122 (65 Pac. 812). Let us see. On the 1st day of January, 1904, the United Elkhorn Mines Company mortgaged this reservoir with other property. Can it, after having conveyed an interest in certain property (for this mortgage must have the force and effect of a conveyance in this case), by abandoning such property, defeat the interest of the mortgagee? Can a mortgagor, in other words, abandon the interest of his mortgagee? It is claimed and admitted that after having executed this mortgage the mortgagor left the State, and had no domicile herein since that time; and that such departure and actual change of residence had continued for more than one year prior to the appropriation by plaintiffs of the reservoir. Would that act of the mortgagor put the mortgagee out of court and deprive him of his rights? The mortgage was foreclosed in the courts of Oregon, the sale made according to the practice of its courts, and title obtained at judicial sale under foreclosure, and the defendant Pollman now holds the title. How can the act of the mortgagor in failing to comply with the laws of

Oregon relating to payment of license fees, annual dues, or operating the reservoir be imputed to the mortgagee and his successors in interest? The interest created by that mortgage could be abandoned, if at all, by the owner and holder of it, and by no one else. The foreclosure of the mortgage and acquisition of title by the present holder thereof, who defends here, conclusively establishes the fact to be that the mortgaged interest has never been abandoned, and the answer to the second question must be in the negative also.

"Thus we find the law to be that nonuser of a water right alone, for any period of time, whether for 5 years or 10 years, does not constitute abandonment—abandonment of the actual owner's interest—overlooking the fact, if we may, that in this case the question is as to whether or not the interest created by him in his mortgagee might be abandoned by the mortgagor. Plaintiff's interest is created by a permit to 'construct a reservoir and to store for beneficial use the unappropriated waters of the State of Oregon,' and that reservoir is the *piece de resistance,* as the French say, here—the bone of contention between the successor in interest of the mortgagee and plaintiffs. Plaintiffs contend that 10 years' nonuser constitutes abandonment and defeats title; but in *Hough* v. *Porter,* 51 Or. 434, p. 69 (98 Pac. 1107), our Supreme Court says: 'To constitute an abandonment of a water right, there must be a concurrence of the intention to abandon it and an actual failure in its use.' The record affirmatively establishes the fact to be that the interest created in the mortgagee has never been abandoned by the mortgagee, or that such action was even contemplated.

"It appearing, therefore, that the suit does not concern a ditch or flume with its appurtenant water right, Section 5136 of the Code does not apply; and that there has been no 'voluntary relinquishment of a known right,' even though the said reservoir had not been used from June, 1899, up to December 29, 1909, it follows that plaintiffs are not entitled to the relief which they seek, and that their suit must be dismissed.

"The petition for rehearing herein urges that the mere fact of nonuser, for a period of 10 years, *ipso facto,* extinguishes the title of the defendant to the reservoir,

independent of Section 5136, L. O. L., and admits, as we read the petition, that the section has no application to the case. That is the view taken by the court of that section as is set forth in the opinion of the court heretofore made and filed.

"The claim that 10 years of nonuser, *ipso facto,* destroys the title of the defendant cannot be sustained. It is not the law. Nonuser for any period whatever may be urged as evidence of an intention to abandon; but under no circumstances does mere nonuser extinguish title. After 10 years it creates a presumption of such intention; but it is a disputable presumption, and in this case the facts overcome such presumption, or, it may properly be stated, prevent such presumption from arising. In *Dodge* v. *Marden,* 7 Or. 456, our Supreme Court holds that water rights 'cannot be lost by nonuser, short of the period for the limitations of actions to recover such property.' *Oviatt* v. *Big Four Co.,* 39 Or. 122 (65 Pac. 812). And then our court adds: 'It will be observed that the court in that case impliedly held that the nonuser of the right of appropriation for said period affords conclusive evidence of an intention to abandon such right.' But the Dodge-Marden Case was decided exclusively on the statute (of which Section 5136, L. O. L., is the amended form); and even if the court did hold in that case that nonuser of a ditch for a period exceeding the statute of limitations conclusively proved an intention to abandon, and an abandonment, that rule would not apply here, and the Dodge-Marden Case is not in point. Nor is the Oviatt Case in point, for practically the same reason, although there seems to have been no consideration of that section by the court in the latter case. But if in the Oviatt Case our Supreme Court follows the rules laid down in the Dodge-Marden Case, relating to abandonment, then the conclusion reached in the former case must have been controlled by the statute that controlled the court in the latter case. But the true rule relating to the case under consideration seems to me to be fairly laid down in the Oviatt Case and in the cases which it cites, notably the cases of *Sieber* v. *Frink,* 7 Colo. 148 (2 Pac. 901), and *Smith* v. *Hope,* 18 Mont. 432 (45 Pac. 632). These cases lay down the rule that nonuser for a period of time exceeding the statute of limitations creates

the disputable presumption only of an intention to abandon. In the Sieber-Frink Case we read: '* * An abandonment of the right, * * if continued for an unreasonable period, creates a disputable presumption of an intention to abandon it, which may be overcome by satisfactory proof to the contrary.' The excerpt just written suggests to my mind what is expressly stated in the Smith-Hope Case, to wit: 'The nonuser of water for so long a period, and especially a period longer than the statute of limitations, is certainly very potent evidence, if it stood alone, of an intention to abandon.' It is the opinion of this court that, in the absence of a statute expressly declaring that nonuser alone for a given period extinguishes title, the fact of nonuser, even for a period of time exceeding the statute of limitations, raises a presumption only (and is not conclusive) on the question of abandonment, and serves no other purpose. Our Supreme Court adopts as law the rules laid down in the Smith-Hope Case; at least it does (not) criticise it—that decision—and I do not see how it could do otherwise. If plaintiffs here had shown that during the 10 years when defendant and his predecessors in interest had not 'used' the reservoir they, the plaintiffs, had been in full adverse possession thereof (which would have precluded defendants from showing possession thereof in themselves, their 'ancestors, predecessors or grantors,' as provided in Section 4, L. O. L.), the result would be otherwise, I think. But they do not claim by adverse possession during a time equal to the statute of limitations. They assert that, merely because defendants have not filled the reservoir in the last 10 years, but have permitted it to remain in a state of desuetude, they have lost title to the same; and that by their own entry thereon after the lapse of that time they become the owners. The statute is silent upon that point, and the cases cited by counsel in their petition for rehearing do not aid them. Any case influenced by the Dodge-Marden Case is not in point.

"Further, we must take this case as it is made. We are not struggling over ditches and flumes and rights appurtenant thereto. Nor have plaintiffs either ditches or lands through or upon which to use the water they wish to store. In view of the pleadings and the proofs, it will not do at this time to insist that this reservoir is

Sig. 12

merely an incident to the intention of plaintiffs to use water therein—to put it to a beneficial use. The question to be determined, under the pleadings, is whether or not the plaintiffs own that reservoir by reason of nonuser thereof by defendants. If not, it is immaterial whether water may be stored in it and put to a beneficial use or not. Nonuser, in the opinion of the court, may become evidence of an intention to abandon, and such evidence may attain the strength of a presumption if the nonuser be long continued; but it is not conclusive evidence, and it may be 'wholly a question of fact and contradicted by other evidence in the case, so as to leave * * not even a conflict of testimony.' Oviatt Case. And this is true, even though the nonuser continue more than 10 years, or indefinitely."

For the reasons above stated, the decree is affirmed.

AFFIRMED.

Decided March 11, 1913.

ON PETITION FOR REHEARING.

(130 Pac. 640.)

Opinion by MR. CHIEF JUSTICE McBRIDE.

In the able brief accompanying their petition for rehearing, counsel question much of the reasoning in the opinion of the lower court, which was adopted as the opinion of this court. As we expressly stated, we did not commit this court to the adoption of all the conclusions reached by the lower court, and our opinion may therefore be treated more as a concurrence in the result there reached rather than in the expressions therein employed. We do not consider the question of nonuser of a water right to be involved in this case. Plaintiffs own no land, no ditch, and no water right. They found upon the reserved lands of the United States a reservoir built by defendant's grantor before the land was reserved, and which, under the laws of the United States, defendant alone could be permitted to maintain without a new per-

mit from the Government, which permit they did not obtain. Defendant, though not using the reservoir, has paid all the taxes that have been demanded upon the property, and, beyond the fact of failure to use it, has otherwise shown an intent to retain it for use in the future. The position of the parties stands thus: The defendant's grantor had lawfully built upon Government land a reservoir. As against every one but the Government, it was the owner of the structure. It is not a right or a site that is in controversy, but a concrete, tangible thing, composed of earth, wood, stones, and iron, and costing five thousand real dollars. Plaintiffs, without permission from the Government, have entered upon its forest reserve and seized this valuable structure. They have built no reservoir, and have no reservoir site. They say to the defendant: "We have seized this property which cost you $5,-000, and we intend to sell it for $4,500; and because you dare to whimper as to the injustice of such a proceeding we will ask a court of equity, a court of conscience, to quiet our title, and compel you to pay the costs as a penalty for protesting." Equity will never lend its aid to such a transaction. There are very ancient injunctions against a man's coveting or taking that which belongs to another, and we are still cognizant of the time-honored direction to do unto others as we would that others should do unto us. There is also a maxim that "He who seeks equity shall do equity," and that "He who seeks equity shall come with clean hands." We would disregard all these and make this court an instrument of oppression, instead of justice, should we allow plaintiffs to prevail in this case, especially since they show no better title than that of squatters on a national forest reserve.

The plaintiffs have no title to be quieted, and the petition for rehearing is denied.

AFFIRMED: REHEARING DENIED.