DANIEL W. DONOVAN, APPELLANT, V. UNION PACIFIC RAIL-
ROAD COMPANY ET AL., APPELLEES.*

FILED JULY 2, 1919.   No. 20959.

Highways: SUIT TO ESTABLISH: LIMITATIONS. Evidence examined, and
    *held*, that the road was abandoned for a period of more than ten
    years before plaintiff began his action, and that his action is
    barred by the statute of limitations.

APPEAL from the district court for Merrick county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*W. T. Thompson* and *Reese & Stout,* for appellant.

*W. H. Thompson, Lloyd G. Thompson, John C. Martin, Thomas W. Bockes, Edson Rich* and *C. A. Magaw, contra.*

ALDRICH, J.

This action in equity was commenced on the 16th day of December, 1914. Plaintiff filed his amended petition in the district court for Merrick county, in which he alleges that he was a citizen and resident of Merrick county, residing within five miles of the public road in

*Reversed on rehearing. See 104 Neb., p. ——.

question; that the road was legally established; that there were legal proceedings instituted to establish the road prior to April 24, 1895, and that this wagon road followed the general line of the Union Pacific main track through Merrick county to the Hall county line.

As the defendants admit that the statement of fact and issues in the appellant's brief are correct and accurate, we copy therefrom, as summarized, sections 3, 4, 5, 6, and 7 of plaintiff's petition:

"That the defendants, without legal right to do so, have closed the road to public travel, and have obstructed the same, and have and are threatening to prevent plaintiff, and the general public, from traveling over and upon said highway, and have plowed and planted it to crops and rendered it unfit for travel, and claim the right to so use the same, either as owners or lessees, and have denied and are denying the right of plaintiff and the public to the use of such highway.

"That on the 24th day of April, 1895, in an action then pending in the circuit court of the United States, in the district of Nebraska, to which the receivers of the Union Pacific Railway Company, the county of Merrick, the board of supervisors of said county, and the Union Pacific Railway Company were parties, it was decreed that the highway in question should be located so that the north line of said highway is and shall be 63 feet south from and parallel to the center line of the main track of said railroad as then constructed through Merrick county, etc., that the railway company should have the right to put in culverts and ditches as needed, etc.

"That said decree was rendered on stipulated facts, to which stipulation the Union Pacific Railway Company, the receivers, Merrick county, and the board of supervisors of Merrick county were parties. That said decree was final, and permanently fixed the right of the public to maintain and use said highway.

"That said public road has never been vacated, and was used for many years until fenced and plowed and obstructed by defendants.

"That plaintiff prosecutes this action in his own behalf and on behalf of others similarly situated; that by closing said road plaintiff, and others, will be damaged and will suffer loss and inconvenience; that said highway is the shortest, best and most convenient road from plaintiff's premises to Grand Island, and plaintiff is without adequate remedy at law."

Plaintiff is a private citizen of Merrick county, and it is admitted that he resides within five miles of the road in issue, and that he has the right to maintain this action. The statute of limitations, which we are met with at the threshold of this inquiry, is found in section 7564, Rev. St. 1913, and provides: "An action for the recovery of the title or possession of lands, tenements or hereditaments, or for the foreclosure of mortgages thereon, can only be brought within ten years after the cause of action shall have accrued: Provided, no limitations shall apply to the time within which any county, city, town or village or other municipal corporation may begin an action for the recovery of the title or possession of any public road, street, alley or other public grounds or city or town lots."

The issue here tendered by the pleadings would seem to be: Has this highway at any time since its organization been unused or abandoned, or has it been a regularly recognized and traveled highway? The legal questions are fairly well settled in this issue. The question is largely one of fact and the section of the statute just quoted applies to the issues herein. It is in evidence that this highway was established west of the town of Chapman across Merrick county in the year 1874. While it is true that the statute was not in every detail complied with, and many things were left undone which the statute requires to have been done, nevertheless it was for years recognized as a regular and correct proceeding, and that the public had the right to travel over this highway attempted to be established at this time: Thus did matters proceed until 1895, when proceedings were instituted in

the federal court for the purpose of establishing finally the highway, which was an issue before the county board of Merrick county in 1874, thus recognizing whatever rights the public had obtained during the year of 1874 had been abandoned, and that it was necessary for the public to maintain further proceedings to establish the rights which had been lost or thrown away after 1874. In the proceedings which took place in the federal court in and for the district of Nebraska in 1895, there was a stipulation or agreement entered into between the defendant, the Union Pacific Railway Company, and the county board of Merrick county. This agreement was adopted and made the decree of the court, and thus by decree of the court a road was established parallel to the right of way of the Union Pacific Railway Company.

From 1894 most of the country on the south side of the Union Pacific road track was open and unfenced, and there was some travel on a wandering and deviating line along the right of way of the Union Pacific west of Chapman. This trail was not a stright line and did not proceed as a road surveyed and marked out and worked, but was simply in the nature of a trail wandering and deviating in its character. There is no evidence that it was ever worked nor a dollar expended upon its improvement. It also is undisputed evidence that there were groves and trees and other incumbrances along this alleged highway, and that the travel did not interfere with groves and trees growing upon the alleged right of way surveyed and platted by the engineer of the county of Merrick. Thus there are evidences on every hand that this road as alleged to have been established in 1874 was simply a paper road and had never proceeded beyond that stage. There is no evidence in the record that the officials, or any of them, whose duty it is to see to roads and keep them in repair, ever did an hour's work, or expended a dollar in money, in keeping up this road and causing it to have the appearance of a public highway. There is in the record no evidence whatever that the

board of supervisors of Merrick county ever exercised any dominion over this road from the Hall county line eastward across Merrick county from the Hall county line to Chapman. Extensive groves have been allowed to grow up; land has been fenced off for many years by farmers and ranchmen; and the entire country, so far as ever having been laid out and marked for this road, has been used and occupied exclusively for farming and stock purposes, and whatever easement, if any, the public acquired by the several legal proceedings of record, they never proceeded any further than making a paper record. Actually neither Merrick county, nor any of its proper officials, ever exercised any authority, or attempted any control, or expended any labor, or cash, for the betterment of the road in question.

The record discloses this was an official report made by a committee, which we will call viewers of the land, to the county board of supervisors. This was done sometime (if we quote the record correctly) in April, 1894. This condition such as we have described is a condition which could not have occured in a day or a night; there are groves and trees which could not have grown up over night, or have been in the condition that they were at the time proceedings were started in federal court in 1895. While we admit that it is true that this situation proves nonuser to a certainty, and for a period of more than 20 years, yet we do not claim that nonuser is at all sufficient to maintain title. If there had been any actual occupancy, tangible and real, beyond paper, this nonuser would be of no force and effect only in so far as it expresses an intention on the part of the public as to what it was going to do with this road for travel purposes, and nonuser is met further in a question like this in so far as it indicates an intention of abandonment, and abandonment for a term of ten years or more in this state is sufficient to deprive the public of the road which has been so treated; but we do not claim that nonuser may create abandonment, but it does clearly declare, and

correctly, we believe, the intention of the parties involved, and that intention may become proof of the purpose or relation that the parties intend to assume toward the road in controversy. Then if this intention is followed up by actual abandonment, and the public fails to recognize its duties and obligations toward this road in the way of labor and repair, it is evident and indisputable, as shown in the record, that the public never intended to occupy and use this alleged road for a public highway. The record does not disclose that the county board of supervisors of Merrick county ever surveyed and laid out the road in issue. Then if it has never taken any of these statutory steps, but allowed the road to grow up to groves and trees, and to be fenced off for farming and stock purposes for a period of over ten years, as this record shows, what statutory law is there in Nebraska that gives it the right of occupancy of the strip of land in question, similar to the Union Pacific, for road purposes? The public, as well as this plaintiff, has abandoned in every particular whatever easement or right that it had ever acquired, or pretended to acquire, in relation to this road. It never by any act dedicated this road to public service. *Postal v. Martin,* 4 Neb. (Unof.) 534.

It cannot be said that abandonment of this road gives any great inconvenience, or causes any great hardship, because, if it had, why would it have been abandoned? If it was so necessary to the welfare and prosperity and convenience of any given set of men, or community, why would they suffer all this inconvenience and annoyance when they could have prevented it by using it if it was so necessary? The record seems to disclose that the road laid out from Chapman south within a mile or two of the Oregon trail is the one used by the public generally, and has been for many years last past in traveling from Chapman to Grand Island; in other words, the record does not disclose that there is any necessity or convenience to be obtained in establishing this road. The report of the viewers appointed by the county com-

missioners in 1894, it occurs to us, is dependable in all respects, and is an impartial statement of the facts, and, as a matter of fact, is corroborative of witnesses, and portrays a true condition of the treatment of this strip of land for highway purposes. There is no question whatever about the intention of the parties to this transaction, and, that being plain, it is proof, in our judgment, of actual abandonment for a period of more than ten years. *Wiggins v. McCleary,* 49 N. Y. 346; *Moore v. United Elkhorn Mines,* 64 Or. 342; *O'Dea v. State,* 16 Neb. 241.

The Union Pacific Railway Company acquired by act of congress in 1864 an easement for the operation of the railroad through and upon this strip of ground involved in the issues of this road case, and as a matter of law it is axiomatic that whatever the public has done with reference to obtaining a roadway over and upon the railroad land in question, and having once obtained it, if it afterward abandoned this right or easement, then it must of necessity revert back to the defendant railway company, and it is a recognized doctrine that after acquiring land for a specific purpose, and afterward it is abandoned, then the easement is forfeited. *Perry v. Staple,* 77 Neb. 656; *Baldwin v. Trimble,* 85 Md. 396, 36 L. R. A. 489. This principle of abandonment as applied to the use of roads and the effect of it is recognized by the Ohio supreme court in *Nail & Iron Co. v. Furnace Co.,* 46 Ohio St. 544, 5 L. R. A. 652. The only reason that the court did not hold that this road had been forfeited by reason of abandonment was that the abandonment did not continue over the statutory period of 21 years; but in Nebraska the statutory period is only 10 years. It appears of record that by reason of the allowing of groves to grow up into large trees, and fences to be used to inclose the ground in issue, over the alleged road right of way, and from the farming business that went on, it was clearly the intention of the public, as well as that of the plaintiff, to pay no attention or to make no

further claims to their easement in and to the premises in question. The following report, then, or rather the digest of it, is given by the committee who made the report for and in behalf of the county supervisors, and we unhesitatingly say that it is corroborative of the position we have taken in the foregoing discussion.

The record discloses that the county board of Merrick county appointed a committee for the purpose of viewing and examining the public road in question. An examination of this report will show that the committee made a careful painstaking investigation, and nowhere in the record does it show that Merrick county ever expended any labor or funds in repairing or building this road, but it met no obligation and showed no interest whatever. The report also shows that on section 32, township 12, range 8, there is a grove of cottonwood trees 56 feet from the south rail, and 40 rods long, also a wire fence 40 rods long and 74 feet from the south rail at west end and 60 feet from rail at east end. On section 33, township 12, range 9, at Lockwood there is a wire fence 4 rods long, 66 feet from rail, and stockyards commencing 65 feet from rail and extending back 128 feet. On section 14, township 12, range 8, there is a fence 104 rods long 45 feet from rail, and a grove of box-elder and cottonwood trees 108 feet from rail on west end, and on section 18, township 12, range 8, there is a row of cottonwood trees 62 feet from rail. Also on section 7, township 12, range 7, Chapman town site, there is 40 rods of fence 97 feet from rail, and in section 8, township 12, range 7, there is 115 feet of grading 1 x 16, 55 feet from rail to north ditch, also 416 feet from grading 1 x 16, 60 feet from rail to ditch and 13 box-elder trees 69 feet from rail. In section 4, township 12, range 9, cottonwood trees 60 feet from rail, and on the northeast quarter of this section there is a grove running parallel to road 116 feet from rail. So this report continues detailing the groves, the fences, and the occupation and use of this alleged road by farmers, running all

the way from somewhere near Central City to the Hall county line. It is absolute and convincing proof of the nonuser of this alleged road for traveling purposes. We suppose that in pioneer days there was possibly a path or track made along the Union Pacific right of way to accommodate itinerant travelers; but the record and the physical condition of the road show that it was not regularly traveled and never had been. This condition prevailed until 1899, when the defendant railway company exercised its right of domain over the strip of ground sought to be used now and then by the public for road purposes.

Neither the public, nor a private individual, has any right to sleep upon his rights so long that witnesses are dead or have departed from the territory in question. It is the law of Michigan that a highway can be partially discontinued by nonuser. *Gregory v. Knight*, 50 Mich. 61. It is the recognized law of this country that "every right or interest in, title to, or ownership of property may be lost by abandonment." 1 C. J. 9, sec. 12. In this case there is evidence of nonuser, which being applied to the question of abandonment of the easement that the plaintiff asserts in the roadway in controversy is evidence of intention. Whether or not he has abandoned his easement depends upon circumstances, and is a question of intention always. Then again in the decree or stipulation entered into when this action was before the federal court in 1895, it is noticeable that neither the county of Merrick nor any one acting for it has ever performed a single agreement entered into at that time or place. The fact is that neither the Merrick county officials nor this plaintiff, nor any one similarly situated as they, have ever exercised any dominion over or performed a single act in recognition of this road, and the record discloses that possibly whatever travel there may have been from Chapman to Grand Island goes a mile or two south of Chapman, and this was on the Oregon trail to Grand Island, and all the travel upon this road has been fitful

and never at any time discloses a well-established rec-ognition of this road, but rather shows no intention on the part of any one either directly or indirectly to use it as a public highway. The record discloses that this Oregon trail is about 1 1/2 miles south of the track near Chapman, and parellel to the Union Pacific Rail-road Company, and is more convenient and more easily accessible in going from Chapman to Grand Island than the path used along the Union Pacific right of way. The Union Pacific in fencing up this easement from Chapman to the Hall county line and leasing the railway right of way to farmers and stockmen was simply reoccupying territory or a strip of land that had been abandoned by the public and the plaintiff herein and those similarly situated.

In *Railroad v. French,* 100 Tenn. 209, 66 Am. St. Rep. 752, is was held by the Tennessee supreme court that a user by an adjacent landowner of the right of way up to the line of road for an indefinite time is not adverse to the road easement. To the same effect is *Southern P. R. Co. v. Hyatt,* 132 Cal. 240.

In concluding this discussion, permit us to say that this court has held: ''Proceedings had under a statute to create a highway should be so definite and certain that a competent surveyor could, with the record before him, point out this location.'' *Warren v. Brown,* 31 Neb. 8. Applying this holding to the question at issue, the ap-pellant's contention wholly fails, because it is a matter of record that there are no landmarks, no corners and none of the usual methods of recognition have ever been established or pointed out. The record does not disclose any evidence of a road there, or any travel, only a wan-dering and deviating path along the railway right of way.

So, from every standpoint, we must conclude that the judgment and finding of the trial court should be, and it is

AFFIRMED.

SEDGWICK, J., not sitting.