Argued June 1; affirmed June 20, 1933

# SMITH *v.* REIGLEMAN ET AL.

(23 P. (2d) 129)

*Elton Watkins* and *Johnston Wilson,* both of Portland, for appellant.

*T. B. Handley* and *Frank S. Sever,* both of Portland (George P. Winslow, of Tillamook, on the brief), for respondents.

BELT, J. This is an action in ejectment. Plaintiff's claim of right to possession of the land involved in this appeal is based upon an alleged leasehold interest acquired in a foreclosure proceeding. While the issues in the instant case are simple, the facts out of which the controversy arose are complicated. In 1925, Mrs. Christensen, the then owner in fee, leased 16 acres of land in Tillamook county to the Oregon Kelp Ore Products Company, a corporation now bankrupt and under a receivership. The lease granted mining rights and privileges to the lessee, but reserved to the lessor certain royalties from sale of kelp ore to be mined and sold and provided for a charge of 5 per cent on the gross receipts derived from operation of bath houses used in connection with the sanitarium. The lessee

was also to pay the taxes on the premises and to construct a graveled road thereon leading from the Roosevelt highway. Numerous other covenants not pertinent to this decision were contained in the lease.

In October, 1925, the Oregon Kelp Ore Products Company to secure the payment of $15,000 executed in favor of the plaintiff a mortgage on the premises in question and also on a six-acre tract not involved in this appeal, subject to all the covenants and terms of the lease obtained from Mrs. Christensen and also subject to the terms of the deed conveying the six-acre tract. After doing some construction work on the property, the Oregon Kelp Ore Products Company sublet the premises encumbered by the mortgage of the plaintiff to the Nestucca Bay Sanitarium Company. The latter company soon became involved in financial difficulties and was also under a receivership. In August, 1927, Mrs. Christensen sold and conveyed her interests in the property leased and also in the six-acre tract to R. E. Clanton. Clanton went into possession and instituted suit to quiet title on the theory that there had been a failure on the part of the Oregon Kelp Ore Products Company and its successor in interest to perform the covenants of the lease to such an extent as to amount to an abandonment of the same. This suit was decided adversely to Clanton, and, on appeal, the decree of the lower court was affirmed (*Clanton v. Oregon Kelp Ore Products Company*, 135 Or. 321, 296 P. 30). Soon after the commencement of the suit to quiet title, the plaintiff instituted suit to foreclose her mortgage covering the six-acre tract and the land which had been leased. She obtained a decree of foreclosure and, on September 17, 1929, became purchaser at the sale on execution. The sheriff's deed was not obtained until February, 1931.

The defendant Reigleman, who in 1931 succeeded to the interests of Clanton, filed a separate answer denying generally the allegations of the complaint. As an affirmative answer and defense he alleged that he was the owner in fee of the real property described in the complaint and that the Oregon Kelp Ore Products Company and its successors and assigns had failed and neglected to perform the covenants and terms of the lease obtained from Mrs. Christensen and that by reason thereof plaintiff and her predecessors in interest have abandoned the premises. To this affirmative answer, plaintiff replied that the defendant Reigleman is estopped from claiming non-performance by reason of the decree of the circuit court, affirmed on appeal, to the effect that the lease was valid and there had been no abandonment of the same. Further, it was alleged in the reply that this defendant and one Clanton prevented plaintiff from performing the covenants of the lease in that they have deprived her of possession of the property. The defendant Balsiger denied generally the allegations of the complaint and alleged affirmatively that he is not now, and was not at the time of the commencement of the action, in possession of the property.

On the issues thus briefly stated, the cause was submitted to a jury and a verdict returned, finding: (1) That plaintiff is the owner in fee and entitled to possession of what has been designated as the six-acre tract, but denying her claim for damages by reason of alleged wrongful detention of the property; (2) that defendant Reigleman is the owner and entitled to possession of the 16-acre tract; and (3) in favor of defendant Balsiger. Plaintiff Smith appeals.

■ Plaintiff was not entitled to possession merely by virtue of her mortgage on the leasehold interest. What rights did she acquire by the foreclosure of the mortgage? Clearly, the plaintiff, unless barred by her own acts and by those of her predecessors in title, was entitled to possession on the date when she became purchaser at the execution sale. In the suit to quiet title it was adjudicated that there had been no such failure of performance of the covenants of the lease as to warrant a forfeiture. The trial court very properly gave effect to this adjudication and limited the inquiry to any breach that may have occurred subsequent to the time the issues were made in the suit to quiet title, viz., on May 2, 1929. It is pertinent to inquire what rights had the original lessee or its successors in interest when their interests were foreclosed, for in such proceedings the mortgagee could acquire no greater rights than those of its mortgagor: *Couch v. Scandinavian American Bank,* 103 Or. 48 (197 P. 284, 202 P. 558, 203 P. 890). If, at the time of the sale on foreclosure, the Oregon Kelp Ore Products Company or its successor in interest had so failed to perform the covenants of the lease as to warrant a forfeiture, it follows that the plaintiff acquired nothing by virtue of the sale. Furthermore, if subsequent to the date of sale, the plaintiff failed to carry out the covenants of the lease, she is not entitled to possession, unless such failure of performance was due to the conduct or acts of the defendants. In other words, when plaintiff took the mortgage, it was subject to all the covenants, terms, and conditions of the lease: 16 R. C. L. 1140. So it was when she became a purchaser at the mortgage foreclosure sale: Wiltse on Mortgage Foreclosures (4th Ed.) § 771.

■ In the light of the above legal principles, we conclude that the trial court did not err in giving the following instructions:

"* * * Reigleman, the defendant, as well as R. E. Clanton, his predecessor in the title he claims is bound by that decree, and you are instructed that you can not consider any default or non-performance of covenants in the Christensen deed and lease to the Kelp Ore Products Company occurring prior to May 2nd, 1929, and you must confine your deliberations to the question of non-performance of covenant, if any occurred, occurring subsequent to that date, May 2nd, 1929. You are not interested in what breaches may have occurred in the covenants or what default may have been brought about prior to that date.

"* * * The plaintiff, Mabel L. Smith, upon foreclosure of her mortgage and purchase of the premises, was, unless barred by her own and the conduct of her predecessor in title, the Kelp Ore Products Company, entitled to the possession of the premises herein involved on September 17th, 1929, the date of the sale under the mortgage foreclosure, so the interval of time you can consider in relation to the failure to perform the covenants of the Christensen lease to the Kelp Ore Products Company is from May 2nd, 1929, to the time of the commencement of this action, January 22nd, 1932, and during that time it was the duty of the Kelp Ore Products Company and its successor in title, the plaintiff, Mabel L. Smith, after the date of the sale to her upon foreclosure, to make a reasonable effort, such as a reasonably prudent man would make, to comply with the terms and covenants of such deed and lease, and that is the primary question, gentlemen, that is here for your determination, the question of compliance, and if they made such reasonable effort to comply with the terms and covenants of the deed and lease, and the defendant Reigleman and Balsiger, and Clanton, their predecessor in title, prevented such performance of the covenants by plaintiff and by the Kelp Ore Products Company, there

would be no default or abandonment of the property by plaintiff or by the Kelp Ore Products Company. And defendants can not, by their conduct, interrupt, retard or prevent performance, and then take advantage of such non-performance so brought about, if brought about by their conduct or by their actions. Abandonment of the premises and the right therein by the Kelp Ore Products Company and the plaintiff would, of course, result in cutting off the right acquired by them under the Christensen lease and mineral and mining rights in lands actually deeded, that is the first two tracts described in the amended complaint, but abandonment is always a question of intention, and in this case it is for your determination from all of the facts and circumstances surrounding the subject matter, and the conduct of the plaintiff and the Kelp Ore Products Company during the time from May 2nd, 1929, to the commencement of this action, January 22nd, 1932''.

Appellant, in assigning error in the giving of the above instructions, contends for the proposition that ''the mortgagee and the mortgagee only can abandon the mortgage interest in property'', citing in support thereof *Moore v. United Elkhorn Mines,* 64 Or. 342 (127 P. 964, 130 P. 640), and *Clanton v. Oregon Kelp Ore Products Company,* supra.

The first case is clearly not in point since no mortgage on a leasehold estate was involved. Neither does the Clanton case support such proposition. The latter case merely holds that the lease was not void and that there had been no abandonment of the premises at the time the issues were joined therein. Can it reasonably be contended that the lessee and its successors in interest would be excused from performance of the covenants of the lease subsequent to such adjudication?

The second assignment of error pertains to the ruling of the court in excluding a copy of a court

order—together with affidavits in support of the motion for the same—citing defendants Reigleman and Balsiger to show cause why they should not be held in contempt of court for refusing to surrender possession of the premises to the receiver for the Oregon Kelp Ore Products Company. This order was made in a suit to which neither plaintiff nor the defendant Reigleman was a party and in which the issues were dissimilar to the one under consideration. Defendant Reigleman had no opportunity to cross-examine the affiants as to the facts set forth in their various affidavits. Needless to say, the court did not err in excluding this matter from the consideration of the jury.

■ The final assignment of error is based upon the contention that there is no evidence tending to show an abandonment of the premises subsequent to May 2, 1929, or the date on which the issues were joined in the suit to quiet title. We have carefully examined the record and conclude that it contains ample evidence to warrant submission to the jury of the issue of abandonment. As counsel well know, if there is any evidence to support the verdict of the jury, the judgment rendered thereon is final and conclusive upon this court. We see no good reason to encumber the reports with a recital of the evidence.

The judgment of the lower court is affirmed.

ROSSMAN, KELLY, and BAILEY, JJ., concur.