M. E. FREE, APPELLEE, v. STUART & SCHMENSKY, IMPLEADED WITH G. W. SAUTTER ET AL., APPELLANTS.

FILED FEBRUARY 7, 1894.    No. 5545.

1. **Landlord and Tenant: FIXTURES.** The right of a tenant to recover trade fixtures must ordinarily be exercised while in possession under his lease; and if he fails to do so it will be lost, unless by some agreement with the landlord the right of removal is preserved.

2. ———: ———: CHATTEL MORTGAGES. Where a tenant gives a chattel mortgage upon a building erected by him upon leased premises, the mortgagee cannot remove the building after the tenant's right of removal expired.

APPEAL from the district court of Douglas county. Heard below before HOPEWELL, J.

The facts are stated in the opinion.

*Charles Offutt,* for appellants:

The property in dispute constitutes a "fixture" in the proper legal sense of that term. The tenant has never possessed the right to remove it, nor the power to delegate that right. (*Teaff v. Hewitt,* 1 O. St., 511; *Freeman v. Lynch,* 8 Neb., 199; *Hutchins v. Masterson,* 46 Tex., 551; *Elwes v. Maw,* 3 East [Eng.], 38; *Buckland v. Butterfield,* 2 Brod. & Bing. [Eng.], 54; *Philipson v. Mullanphy,* 1 Mo., 620; *Long v. Kee,* 8 So. Rep. [La.], 610; *Merritt v. Judd,* 14 Cal., 60; *Roseville Alta Mining Co. v. Iowa Gulch Mining Co.,* 24 Pac. Rep. [Col.], 920; *Collamore v. Gillis,* 22 N. E. Rep. [Mass.], 46; *Harmon v. Kline,* 12 S. W. Rep. [Ark.], 496.)

Whatever right to remove the tenant may once have possessed could only have been exercised during his tenancy. (*Fitzherbert v. Shaw,* 1 H. Bl. [Eng.], 258; *Lyde v. Russell,* 1 B. & Ad. [Eng.], 394; *Lee v. Risdon,* 7 Taunt. [Eng.], 191; *Thomas v. Crout,* 5 Bush [Ky.], 37; *White v. Arndt,* 1 Whart. [Pa.], 91; *Pemberton v. King,* 2 Dev. [N. Car.], 376; *Gaffield v. Hapgood,* 17 Pick. [Mass.], 192; *Stockwell v. Marks,* 17 Me., 455; *Brooks v. Galster,* 51 Barb. [N. Y.], 196; *Beers v. St. John,* 16 Conn., 322; *Lawrence v. Kemp,* 1 Duer [N. Y], 363; *Shepard v. Spaulding,* 4 Met. [Mass.], 416; *Preston v. Briggs,* 16 Vt., 124; *Haflick v. Stober,* 11 O. St., 482; *Moore v. Smith,* 24 Ill., 512; *Thropp's Appeal,* 70 Pa. St., 396; *Dingley v. Buffum,* 57 Me., 381; *Whipley v. Dewey,* 8 Cal., 36; *Pugh v. Arton,*

8 L. R. Eq. [Eng.], 626 ;. *Davis v. Eyton*, 7 Bing. [Eng.], 154; *Weeton v. Woodcock*, 7 M. & W. [Eng.], 14; *Minshall v. Lloyd*, 2 M. & W. [Eng.], 450; *Mackintosh v. Trotter*, 3 M. & W. [Eng.], 184; *Josslyn v. McCabe*, 1 N. W. Rep. [Wis.], 134; *Erickson v. Jones*, 35 N. W. Rep. [Minn ], 267·; *Carlin v. Ritter*, 13 Atl. Rep. [Md.], 370; *Loughran v. Ross*, 45 N. Y., 792.)

The tenant has no right to remove the buildings and his mortgagee cannot do so. (*Friedlander v. Ryder*, 30 Neb., 783; *Smith v. Park*, 31 Minn., 70; *Talbot v. Whipple*, 14 Allen [Mass.], 177; *Fitzgerald v. Anderson*, 51 N. W. Rep. [Wis.], 554.)

*Cavanagh, Thomas & McGilton, contra:*

The building was designed for the purpose of trade and can be removed without permanent injury to the realty. The mortgagee of the tenant had, therefore, a perfect and clear right to remove the property covered by the mortgage. (*Capen v. Peckham*, 35 Conn., 95; *Lamphere v. Lowe*, 3 Neb., 136; *Van Ness v. Pacard*, 2 Pet. [U. S.], 143; *Lawton v. Lawton*, 3 Atk. [Eng.], 13; *Penton v. Robart*, 2 East [Eng.], 88; *Poole's Case*, 1 Salk. [Eng.], 368; *Whiting v. Brastow*, 4 Pick. [Mass.], 310; *Smith v. Benson*, 1 Hill [N. Y.], 176; *Ombony v. Jones*, 19 N. Y., 239.)

Where a tenant by the year holds over his term he becomes a tenant for another year. (*Critchfield v. Remaley*, 21 Neb., 178; *Crommelin v. Thiess*, 70 Am. Dec. [Ala.], 501.)

NORVAL, C. J.

This action was brought in the court below by appellee M. E. Free to foreclose a chattel mortgage given by the defendants Stuart & Schmensky on two greenhouses erected by them on leased real estate owned by appellants George W. Sautter and Frank Sautter. The cause was

tried by the district court upon a written agreed statement of facts, signed by the attorneys of the respective parties, of which the following is a copy:

"1. In the spring of 1888 the said George W. and Frank Sautter were the owners in fee of a certain dwelling house, with outbuildings and about ten acres of land surrounding, in the outskirts of the city of Omaha, and within the limits of said city. That at said time said Sautter brothers rented the house and outbuildings only from April 1, 1888, to March 1, 1889, to the defendant C. Schmensky for $100. The rent for this term was paid.

"2. At the end of this term said George W. and Frank Sautter rented the house, barn, orchard, vineyard, and all the land for one year for $200, the lease expiring March 1, 1890, and of this rent the tenant Schmensky paid $93, leaving a balance still unpaid of $107.

"3. At the end of this term, on March 3, 1890, said George W. and Frank Sautter rented the same premises for another year to said Schmensky for $225, the lease expiring March 1, 1891. Of this rent there was paid $13.40.

"4. At the end of the last term the tenant, Schmensky, held over until May 12, 1891, at which time the tenant quit the possession and occupation of the premises, leaving a total of rent unpaid amounting to the sum of $341.60, no part of which has yet been paid.

"5. That in the spring of 1890, said Schmensky requested permission of said George W. and Frank Sautter, owners of said premises, to erect thereon two buildings and a boiler house, and that the same were erected during the spring and early summer of 1890. They were erected by building the same out of planks and posts, with the use of glass and sash, as is usually the case in greenhouses, the said boards or planks being fastened to a number of upright posts that were inserted and fastened into the ground for a distance of about two feet below the surface. The framework was built around said posts.

"6. That there was also constructed in said greenhouses a boiler for the purpose of heating the same, by building a brick foundation down into the ground, and building said brick up over and around said boiler, leaving it stationary, and pipes were attached to and ran from said boiler through the various portions of the house so constructed, and fastened to the said greenhouse in order thereby to conduct the heated water and for the purpose of keeping the temperature in a condition required for greenhouses. The two buildings used as greenhouses were each seventy-five feet long and ten feet wide, and were covered with glass and sash. They were constructed by nailing strips running from post to post, and onto those strips the planks for the sides and ends were nailed securely, and said houses and boiler are still remaining on said premises as when originally constructed.

"7. On January 14, 1891, said Schmensky and one Stuart, who were partners as Stuart & Schmensky, executed to plaintiff a chattel mortgage, a true copy of which is attached and made a part of plaintiff's petition herein, and the same was filed in the office of the county clerk of Douglas county, Nebraska, on said 14th day of January, 1891, at the hour of 3:45 P. M., and duly indexed in said office as required by law in case of chattel mortgages, said chattel mortgage being to secure the amount of money stated therein, and the amount now due thereon and unpaid by said mortgagors to the plaintiff is $182.40.

"8. Said property was leased for the purpose of using the residence as a dwelling house, and the land for the purpose of gardening, raising flowers and shrubs, it having been used for this purpose for several years last past. At the time said houses were constructed there was nothing said by the tenant about removing said greenhouses, boiler, and boiler house at the expiration of the lease, or at any other time.

"9. The plaintiff claims a lien on said houses and boiler.

by virtue of the foregoing chattel mortgage, and the defendants George W. and Frank Sautter claim them as fixtures to, and a part of, said land."

The trial court found that Stuart & Schmensky executed and delivered to plaintiff the chattel mortgage, described in the petition, to secure an indebtedness of $163.84; that the buildings described in said mortgage were erected by the mortgagors upon leased premises and were such fixtures as the tenants had a right to remove; and that said houses are subject to the said chattel mortgage. From a decree of foreclosure and sale, the Sautters appeal to this court.

The point in dispute is, which party is entitled to the buildings covered by the mortgage? The mortgagee claims them by virtue of his mortgage, while the appellants insist that, as the improvements were erected by tenants on leased premises, they are a part of the realty, and neither the tenants nor the mortgagee had a right to remove them, at least, after the expiration of the tenancy.

The larger portion of the brief of counsel on either side is devoted to the discussion of the law of fixtures, and what are, and what are not, movable fixtures. The decisions on the subject are at variance and irreconcilable. We have not the time at our disposal now to review the authorities cited in the briefs, or to discuss the question; nor is it essential that we should do so. For the purposes of this case we will assume that the buildings in controversy were trade fixtures, and were erected under such circumstances as to entitle the tenants to remove them, had they exercised that right in time. The authorities are quite uniform to the effect that, in the absence of an agreement or understanding to the contrary, a tenant cannot re-enter and remove his fixtures and improvements after the expiration of his tenancy. By surrendering possession he forfeits his rights to them. The rule on the subject is well stated by Mr. Taylor in his valuable work on Landlord and Tenant thus: "The decisions also agree, that whatever fixtures the ten-

ant has a right to remove must be removed before his term expires, or at least before he quits possession; for if the tenant leaves the premises without removing them, and the landlord takes possession, they become the property of the landlord. The tenant's right to remove is rather considered a privilege allowed him than an absolute right to the things themselves. If he does not exercise the privilege before his interest expires, he cannot do it afterwards, because the right to possess the land and the fixtures as a part of the realty vests immediately in the landlord; and although the landlord has no right to complain if the land be restored to him in the same plight it was before he made the lease, yet if the land is suffered to return to him with additions and improvements, even by forfeiture of notice to quit, he has a right to consider them as part of his property." (Taylor, Landlord and Tenant [8th ed.], sec. 551.) And in the case of *Friedlander v. Ryder*, 30 Neb., 787, in considering the authority of a tenant to remove his fixtures, we said: "Under the lease, as established by the evidence, the tenant had a right, before the surrender of possession, to remove any improvements owned by him which are embraced under the head of tenant's fixtures, but the tenant had no authority to remove such improvements after the termination of the tenancy; in other words, the tenant could not re-enter to remove his fixtures after the surrender of possession to the landlord."

It appears from the stipulation that the lease, under which the tenants occupied the premises, expired on March 1, 1891, and that on the 12th day of May following they quit possession without removing the buildings which they had erected by permission of the owner of the realty. The record fails to disclose that there was any agreement or understanding between the parties about the removal of the improvements at the expiration of the lease, or any other time. In view of these facts there could be no doubt that the tenants have forfeited their right of removal.

Counsel for appellee contend that the tenancy had not expired when the tenants surrendered possession; that they were tenants from year to year, and, although the lease terminated March 1, 1891, they having occupied the premises for several months after that time, the lease was thereby continued in force for another year, or until March, 1892. It is a familiar doctrine that where, in case of a tenancy from year to year, the tenant continues to occupy the property after the expiration of his lease by the consent of the landlord, it will be presumed, in the absence of an express agreement to the contrary, that the lease is extended for another year; but we are unable to see how this rule can aid the appellee, since the tenants voluntarily abandoned possession; and it does not appear that either they or the landlord, after such abandonment, regarded the lease in force.   The doctrine that the right of a tenant to remove his improvements must be exercised before the expiration of his lease, applies alike to cases where the tenancy terminates by lapse of time, and to cases where it is determined by his own act.   He may forfeit his right to remove his fixtures by voluntarily surrendering the possession to the landlord without reservation.   It is quite probable, however, that such surrender would not affect the previously acquired rights of the tenant's vendees or mortgagees. They should have the right to enter and remove the fixtures at any time before the lease would, by its terms, have expired.   In the case at bar no attempt has been made to remove the buildings at any time.   They were on the premises when the decree of foreclosure was entered, which was long after March 1, 1892, and it is not claimed that the tenancy continued after that date.   Upon principle, as well as authority, we are constrained to hold that the mortgagees forfeited their right to the buildings by their failure to exercise it during the tenancy.

It is finally contended that since the tenancy had not expired when the mortgage was given, and inasmuch as the

tenants could have removed the mortgaged fixtures, the appellee's rights vested and became fixed, and were not affected by the subsequent termination of the lease. The mortgage conferred the same rights upon the mortgagee to remove the fixtures that the mortgagors had, and no greater. Appellee was therefore required to exercise the privilege of removal during the tenancy. In principle the case at bar is not distinguishable from *Friedlander v. Ryder, supra.* In that case a creditor caused an execution to be levied upon a tenant's fixtures. It was held that the creditor thereby acquired no greater right to re-enter and remove them than the tenant had. A case precisely in point is *Smith v. Park,* 31 Minn., 70. There a tenant during his term had executed a chattel mortgage upon a frame building upon leased premises. The landlord claimed the building and the mortgagee brought replevin after the lease expired. The court held that the mortgagee's right to remove the building was lost. The court in the opinion say: "The plaintiff stands in no better position than did Burgess [the tenant]. His right to the property, as against the landlord, is only such as the tenant under whom he claimed had. It was for him to see to it that the building was removed within the time which, by the law and terms of the contract, was given to the tenant for such a purpose."

Our conclusion is that the trial court erred in decreeing the foreclosure of the mortgage. The decree is, therefore, reversed and the action

DISMISSED.