Argued November 17, 1920, modified April 12, modified December 20, 1921, objections to cost bill sustained in part January 31, 1922.

# COUCH *v.* SCANDINAVIAN–AMERICAN BANK

## ET AL.

### (197 Pac. 284; 202 Pac. 558; 203 Pac. 890.)

**Estoppel—Defense must be Pleaded.**

1. To be available as a defense, estoppel must be pleaded.

**Estoppel—Lessor Suing Mortgagee of Building to Remove Cloud on Title not Estopped by Unsuccessful Position in Prior Suit.**

2. Mortgagee of skating-rink building, sued by the lessor of the premises to the mortgagor to remove cloud on title, *held* not in position to plead an estoppel against the lessor, because in her suit against the mortgagor and a surety company on account of removal of the building from the premises she took up a position inconsistent with that taken by her in the present suit; plaintiff lessor in such former suit not having successfully maintained her position.

**Landlord and Tenant—Court will not Decree Idle Ceremony of Sale of Forfeited Leasehold Interest on Foreclosure.**

3.  In case foreclosure of a mortgage of a lessee's interest is sought, equity will not decree an idle ceremony of a sale; the lessee's title having failed under the conditions of the lease.

**Landlord and Tenant—Mortgagee of Leasehold Interest Could Acquire No Greater Rights Than Tenant.**

4.  The mortgagee of a leasehold interest could acquire no rights greater than or superior to those of its mortgagor, the tenant; the mortgagee of such an interest taking it subject to all the conditions and covenants of the lease.

**Landlord and Tenant—Lessor Held not Entitled to Invoke Forfeiture to Secure Building Erected by Lessee With Many Creditors.**

5.  In suit to remove cloud on her title, by the lessor of premises whereon a skating-rink was erected, brought against a bank, mortgagee of the lessee's interest, plaintiff lessor *held* not entitled to forfeiture giving her good title to the building erected on the premises by the lessee worth some $60,000; there being many creditors of the lessee who should be paid.

## ON PETITION FOR MODIFICATION OF DECREE.

**Landlord and Tenant—Landlord's Rights as Against Mortgagee of Lessee Stated.**

6.  An owner of premises having leased them to one who erected skating-rink thereon, which, by the terms of the lease, was a chattel, and the lessee having mortgaged the building to a bank to secure creditors and gone into bankruptcy, whereupon the lessor, exercising an option under the lease, declared the lease void, and brought an action against the bank to quiet title, *held*, that she was not entitled to forfeiture giving her good title to the building worth some $60,000, but the court should hear evidence in order to give the bank equitable relief, and to determine the amount of taxes, rents, etc., and any other moneys due plaintiff by reason of the lease, and should charge against her rentals received and damages paid to her for failure to remove the structure, after which the bank, by paying any balance remaining due her, should be entitled to foreclosure of its mortgage.

## ON OBJECTIONS TO COST BILL.

**Costs—Expenses of Transcript Taxable on Appeal, When Necessary to Trial in Supreme Court.**

7.  Under Laws of 1921, page 621, Section 1, the cost of a transcript of the testimony, when necessary for the trial of the cause in the Supreme Court, constitutes a legal disbursement, taxable as costs on appeal.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

The purpose of this suit was to cancel the apparent lien of a chattel mortgage upon the leasehold interest of the Portland Ice Hippodrome in certain real property of the plaintiff. This appeal is from a decree rendered by the court in favor of Mary H. Couch, plaintiff, and against the defendants, the Scandinavian-American Bank, et al., whereby said mortgage lien was annulled. On September 27, 1913, the plaintiff entered into a lease with the Portland Ice Hippodrome, an Oregon corporation, whereby the said real property was let to the company. Under the terms of the lease the structure involved in this litigation was erected for the purpose and with the intention of conducting an ice skating-rink. The material used in the construction thereof consisted of concrete, brick, steel, and wood. We learn from the record that the entire improvement consists of two large buildings under one roof. The walls of the structure are of concrete, reaching from the sidewalk to the eaves, a distance of 22 feet. At some points the walls are 6 to 8 feet wide and extend as many feet into the earth. The roof is a huge dome, supported by large trusses of wood. One building is 135 feet by 360 feet, the other 40 feet by 360 feet. Among the important provisions in the lease set forth are the following:

"It is understood and agreed between the parties hereto that it is the intention and agreement of the lessee, and its object in effecting this lease, to construct and erect upon said premises at its own expense, a reinforced concrete building, and that the plans and specifications for such building are to be submitted in advance to, and are to be approved by

the city building inspector and lessor, before work on the building is commenced; and that the work of constructing the building is to be commenced as soon as reasonably practicable after the date thereof, and is thereafter to be pushed to completion as speedily as may be reasonably practicable. * *

'That it (lessee) will, at its own proper cost and expense, pay and discharge promptly, as the same become due and payable, all taxes, street assessments, sewer assessments, and other taxes, assessments, and charges whatsoever, which may at any time, during the term of this lease, be levied, assessed, or imposed, or become due and payable against or on account of said leased premises, or any part thereof, or against any improvements thereon. * *

''That it (lessee) will, prior to the commencement of the work on said proposed building, execute and deliver to the lessor a bond or undertaking in the penal sum of Ten Thousand ($10,000) Dollars, satisfactory to the lessor as to form and sureties, conditioned as follows:

'' * * To secure the prompt payment of the rent, taxes, assessments, and other charges referred to herein.

''To secure the prompt removal of any and all buildings and improvements then upon said premises at the termination of this lease by expiration or otherwise, and the restoration of said premises to its original good order and condition. * *

''That at the end of said term, or any sooner determination of this lease, it will quit and deliver up the said leased premises to the lessor, in all respects in accordance with the agreement herein contained relative to the disposition to be made at such time as to said premises and the improvements then existing thereon.

''Upon the expiration of said term, lessee shall, within ninety (90) days thereafter, at its own cost and expense, remove from said land all improvements and restore said premises to its present good order and condition, leaving the land level as at present; and for any time after the expiration of said term

which may be consumed in the removal of said improvements from said premises, lessee shall pay to lessor rent at the rate which will be due hereunder for said premises for the last month of said term. * *

"PROVIDED ALWAYS, and these presents are upon this condition, that if any installment of the said rent shall, at any time, be in arrears for the space of fifteen (15) days from and after the first day of the calendar month for which the same shall be due, or if the said lessee, or its executors, administrators, or assigns, do or shall fail or neglect to do, observe or perform any or all of the covenants or agreements hereinbefore contained, which on its part are to be performed or observed, then and in either of said cases, the said lessor, or her successor in interest, or those having her estate in the premises, lawfully may, immediately or at any time thereafter and while such neglect or default continues and without notice or demand, enter into or upon said premises, or any part thereof, in the name of the whole, and repossess the same as of her former estate, and expel the lessee and those claiming under it, and remove its or their effects forcibly if necessary, without being taken or deemed guilty in any manner of trespass and without prejudice to any remedies which might otherwise be used for arrears of rents or preceding breach of covenants."

In May, 1915, in order to secure a large sum of money due its many creditors, the Portland Ice Hippodrome executed a mortgage upon the said building and improvements to the defendant The Scandinavian-American Bank, as trustee. Plaintiff gave her consent to the mortgage, in words and figures as follows:

"I, Mary H. Couch, of Portland, Oregon, being the party of the first part named and mentioned in that certain lease or agreement dated September 27, 1913, referred to in the foregoing mortgage from the Portland Ice Hippodrome to The Scandinavian-American Bank, hereby consent to the due execution and delivery of the foregoing mortgage, provided that

any one claiming under said mortgage, so far as this consent is concerned, shall claim no more rights or interest of any nature than could be claimed by the lessee; it being understood that said lessee has no interest in the lands leased other than what is acquired under and by authority of said lease."

In the trial of this cause the court found these facts:

"That said Portland Ice Hippodrome defaulted in the performance of its covenants as contained in said lease, in that it neglected, failed, and refused to pay the rentals and taxes as stipulated therein, and other covenants contained therein, and thereupon Mary H. Couch, under and by virtue of her option and rights under said lease, cancelled said lease and declared the same null and void, and of no effect; * *

"That said Portland Ice Hippodrome was duly adjudged a bankrupt on the 17th day of November, 1916, by the Honorable CHARLES E. WOLVERTON, Judge of the District Court of the United States for the District of Oregon. * *

"That although informed that the said Portland Ice Hippodrome was a bankrupt and that its lease with Mary H. Couch had been canceled, and although it had a chattel mortgage against the leasehold interests of said Portland Ice Hippodrome, the said The Scandinavian-American Bank neglected, failed, and refused, and still and now neglects, fails, and refuses to comply in any manner whatsoever with the terms and conditions of said lease, or to subrogate itself to the rights and equities of said Portland Ice Hippodrome, a bankrupt, if any they have, or to do or offer to do or perform any act or thing, in any way or manner whatsoever, to protect its rights under said mortgage, if any it has, or to fulfill any of the terms of the agreement of said lease, and has neglected, failed, and refused to remove or offer to remove the building erected upon said premises in compliance and in accordance with the covenants, conditions, and agreements as contained in said lease."

As a conclusion of law, the court found that the plaintiff, Mary H. Couch, was entitled to a decree removing the apparent cloud upon her title to all of the aforesaid real property, together with the building and other improvements thereon, and entered a decree in accordance with said findings.

Appellants assign error to the effect following:

"The court should have found * * in the case entitled 'Mary H. Couch, Plaintiff, *v.* Portland Ice Hippodrome Company, a Corporation, and Oregon Surety & Casualty Company, a Corporation, Defendants,' in addition to the findings made herein, the further fact that in the decree in said suit it was adjudged that plaintiff recover the sum of $6,500 for the removal of the building. * *

"The court erred: In finding that plaintiff was the sole owner of the buildings and erections upon the aforesaid premises * * .

"In finding that the mortgage of The Scandinavian-American Bank was an apparent cloud upon the title of the defendant Mary H. Couch * * .

"In not finding that the Portland Ice Hippodrome is the owner of said building * * .

"In not finding that the mortgage of The Scandinavian-American Bank is a valid lien upon said building * * .

"In finding that the rights of the Portland Ice Hippodrome and of The Scandinavian-American Bank have been rendered void by cancellation of said lease * * .

"In not decreeing the mortgage of The Scandinavian-American Bank a valid lien upon said building * * .

"In its conclusion of law that the said mortgage is an apparent cloud upon the title of plaintiff * * .

"In not making its conclusion of law that the said plaintiff Mary H. Couch had * * elected to treat the said Portland Ice Hippodrome as the owner of the said buildings and entitled to the rental thereof * * ."

MODIFIED.

For appellants there was a brief over the names of *Mr. Guy C. H. Corliss, Messrs. Joseph, Haney & Littlefield,* and *Mr. Sidney J. Graham,* with an oral argument by *Mr. Corliss.*

For respondents there was a brief over the names of *Mr. L. E. Crouch* and *Messrs. Wilbur, Spencer, Beckett & Howell,* with an oral argument by *Mr. Crouch.*

For defendants, Chris A. Bell, Trustee, and Ladd & Tilton Bank, there was a brief and an oral argument by *Mr. H. B. Beckett.*

BROWN, J.—1, 2. The Scandinavian-American Bank, the defendant and cross-complainant, asserts that Mary H. Couch, plaintiff, has estopped herself from making any claim to the building situate upon her land, by taking a position, in the suit of Mary H. Couch v. Portland Ice Hippodrome and the Oregon Surety & Casualty Company, inconsistent with that taken in the present suit. In order to be available as a defense, an estoppel must be pleaded. This court has held that:

"Under the provisions of Section 73, B. & C. Comp. (Section 73, Or. L.), the defendant can only put in evidence under the denials such facts as go to disprove the plaintiff's cause of action. If he intends to rest his defense upon any other matter, such as * * estoppel, * * , it must be pleaded." *Springer* v. *Jenkins,* 47 Or. 506 (84 Pac. 479).

Chief Justice BEAN, discussing this subject, said:

"Where an estoppel is relied upon, the facts constituting it must be pleaded with particularity and precision, and it must be alleged that the party setting up the estoppel relied upon such facts, believing them to be true, and will be prejudiced by allowing them to

be disproved. Nothing can be supplied by inference or intendment." *Haun* v. *Martin,* 48 Or. 304 (86 Pac. 371).

In the case of *Rugh* v. *Ottenheimer,* 6 Or. 231 (25 Am. Rep. 513), a suit in the nature of a cross-bill to an action of ejectment, the court said:

"It is claimed, as a further defense in this case, that the plaintiff is estopped from claiming this land, as she acquiesced in giving the deed to her husband by Gardner, and that it is a fraud for her to now claim the land against the creditors of her husband, who furnished the goods on the faith that he was the owner of this land. * * If she has been guilty of fraud which should estop her, then the same should be pleaded to make it allowable, which is not done, and the matter of estoppel cannot be considered in this case."

The doctrine of this case, that an estoppel, to be relied upon as a defense, should be pleaded, is approved in many subsequent Oregon cases, among which are: *Bays* v. *Trulson,* 25 Or. 109 (35 Pac. 26); *First National Bank* v. *McDonald,* 42 Or. 257 (70 Pac. 901); *Duff* v. *Willamette Iron & Steel Works,* 45 Or. 479, 482 (78 Pac. 363, 368, 17 Am. Neg. Rep. 121); *McCully* v. *Heaverne,* 82 Or. 653 (160 Pac. 1166, 162 Pac. 863); *Vogt* v. *Marshall-Wells Hardware Co.,* 88 Or. 464 (172 Pac. 123).

Chief Justice McBride, in speaking for this court, said, in *Portland* v. *Inman-Poulsen Lbr. Co.,* 66 Or. 103 (133 Pac. 829, 836, Ann. Cas. 1915B, 400, 46 L. R. A. (N. S.) 121); that

"Equity will not concern itself as to the lack of technical pleading of an estoppel, as such, when all the facts necessary to constitute such estoppel are pleaded and no objection is made as to the form of the pleading," citing in support thereof *Carlyle* v. *Sloan,* 44 Or. 357 (75 Pac. 217).

In the case at bar, Mary H. Couch successfully maintained an action against the Oregon Surety & Casualty Company, a corporation, and recovered $6,500 for the removal from her premises of the structure known as the "Hippodrome" and for the restoration of the premises to their former condition.

It is a principle of law that:

"A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings, and has succeeded in maintaining that position, is estopped to assume a position inconsistent therewith to the prejudice of the adverse party. It is necessary, however, that the claim or position previously asserted or taken should have been successfully maintained, that it should be actually inconsistent with the position presently taken, and that it should not have been taken through the fault of the adverse party. It is essential also that the party claiming the estoppel should have been misled by his opponent's conduct, that he should have acted in reliance thereon, and that his rights would be injuriously affected if his opponent were permitted to change his position." 21 C. J. 1223.

We do not believe that The Scandinavian-American Bank is in a position to plead an estoppel, because it is an established principle of law that

"In order to work an estoppel the position assumed in the former trial must have been successfully maintained. In proceedings terminating in a judgment, the positions must be clearly inconsistent, the parties must be the same, and the same questions must be involved." 21 C. J. 1229, 1230.

The Scandinavian-American Bank offered in evidence the certified copy of judgment-roll in the case entitled, "Mary H. Couch, Plaintiff *v.* Portland Ice Hippodrome, a Corporation, and Oregon Surety & Casualty Company, a Corporation, Defendants." This was received in evidence without objection. The rec-

ord shows that Mary H. Couch had pleaded her judgment against the Oregon Surety & Casualty Company. While the record fails to disclose an estoppel, it must be kept in mind that this is a suit wherein the plaintiff has asked relief from a court of equity. The judgment against the Oregon Surety & Casualty Company is a pertinent circumstance in establishing whether or not Mary H. Couch, herself, has done equity. Does she come into a court of conscience with clean hands?

3. We will now briefly examine the appellants' request for relief. Appellants ask this court for the dismissal of plaintiff's complaint, and that an order be entered directing a decree of foreclosure of the mortgage upon the building and a sale of the same to satisfy the amount of such mortgage and costs. Such an order would be futile. It is a rule of law that when personal property has been pledged by way of mortgage, that is to say, the interest of the lessee in the term, a court of equity, in case a foreclosure of the mortgage is sought, will not decree the idle ceremony of a sale: 2 Underhill on Landlord and Tenant, 1100; *Miller* v. *Warren,* 182 N. Y. 539 (75 N. E. 1131; affirming 94 App. Div. 192, 87 N. Y. Supp. 1011).

4. In the case at bar, the lessee's title failed. The mortgagee has no better title than the lessee: 27 Cyc. 1041.

"As a consequence of a termination of the lessee's rights, all interests of third persons acquired and held by them under the lessee are also terminated, as they can acquire no rights in the premises other than the original lessee had." 16 R. C. L., § 661, under title "Landlord and Tenant."

"A forfeiture terminates as a general rule all rights of the lessee in the demised premises." 16 R. C. L., § 660, under title "Landlord and Tenant";

*Kutter* v. *Smith,* 2 Wall. (69 U. S.) 491 (17 L. Ed. 830); *Bush* v. *Havird,* 12 Idaho, 352 (86 Pac. 529, 10 Ann. Cas. 107).

When The Scandinavian-American Bank took a mortgage on this property, it took it subject to all the restrictions placed by law upon the Portland Ice Hippodrome, the tenant and mortgagor. The bank could acquire no rights greater than or superior to those of its mortgagor: *Bush* v. *Havird,* 12 Idaho, 352 (86 Pac. 529, 10 Ann. Cas. 107), citing *Sweet* v. *Myers,* 3 S. D. 324 (53 N. W. 187); *Free* v. *Stuart,* 39 Neb. 220 (57 N. W. 991); *Fuller* v. *Brownell,* 48 Neb. 145 (67 N. W. 6); *Talbot* v. *Whipple,* 14 Allen (Mass.), 177; 13 Am. & Eng. Ency. of Law (2 ed.), 653; 2 Underhill on Landlord and Tenant, § 653.

It is said in 2 Tiffany, Landlord and Tenant, Section 247:

"A creditor, or other person claiming under the tenant, has ordinarily no right of removal if the tenant would not have such right. So it has been held that if the tenant would have no right of removal owing to the expiration of the tenancy, or his relinquishment of possession, one to whom he has sold or mortgaged the article would not have such right." Citing *Talbot* v. *Whipple,* 96 Mass. (14 Allen) 177; *Smith* v. *Park,* 31 Minn. 70 (16 N. W. 490); *Free* v. *Stuart,* 39 Neb. 220 (57 N. W. 991); *Fuller* v. *Brownell,* 48 Neb. 145 (67 N. W. 6); *Massachusetts Nat. Bank* v. *Shinn,* 18 App. Div. 276 (46 N. Y. Supp. 329); Id., 163 N. Y. 360 (57 N. E. 611).

"So a purchaser at a sale under mortgage of a fixture annexed by the tenant cannot remove it if the tenant would not have such right." *Ozark* v. *Adams,* 73 Ark. 227 (83 S. W. 920); *Sweet* v. *Myers,* 3 S. D. 324 (53 N. W. 187).

The mortgagee of the leasehold interest takes it subject to all the conditions and covenants of the lease, and a failure to pay the rent and keep the

taxes paid was equally a default in the Scandinavian-American Bank as in the Portland Ice Hippodrome.

As stated in the case of *Abrahams* v. *Tappe & Fry*, 60 Md. 322, 323:

"The rent having been allowed to remain unpaid for more than one year, and Mrs. Abrahams having by reason of that default, and in the assertion of her rights as landlord, secured an actual and peaceable repossession of the premises * * , the lease became absolutely forfeited and the mortgage, so far as it affected the premises, fell with it. * * She took and held possession in assertion of her claim to the ownership of the fee, and her actual re-entry following the perfected right to re-enter, worked the forfeiture of the lease; and she stands in relation to the property as if the lease had never been made. So far, then, as she is concerned, the interest or estate conveyed in the mortgage is as if it had never existed." *Mayhew* v. *Hardesty*, 8 Md. 479; *Cook* v. *Brice*, 20 Md. 397; *Bush* v. *Havird*, 12 Idaho, 352 (86 Pac. 529, 10 Ann. Cas. 107); *Hughes* v. *Kershaw*, 42 Colo. 210 (93 Pac. 1116, 15 L. R. A. (N. S.) 723); 24 Cyc. 987.

The Scandinavian-American Bank should have protected itself against the forfeiture of its security. It had a right to pay the rent and taxes so as to prevent the forfeiture of the lease. A valuable case on the privilege of subrogation by mortgagee to the rights of the lessee of the leasehold interest is that of *Dunlop* v. *Chance*, 174 N. Y. 411 (67 N. E. 60), and authorities there cited. The bank has been slow indeed in asserting its rights or in assuming its obligations by paying the rent and taxes on the property; but this is accounted for by the fact that it was lulled into a sense of security by the representations of Mr. Glisan, attorney in fact for Mary H. Couch, when he said to Neppach:

"I remember it real distinctly, that Mr. Glisan came down to my place of business and asked me not to remove the building; that it was a big asset for his aunt; and I told him that as long as he did not interfere with our rights as mortgagee, we certainly would not harm him, and he agreed to it; and I have kept faith with him, too."

It has been written that:

"It is well settled that where the agreement secured is simply one for the payment of money, a forfeiture either of land, chattels, securities, or money, incurred by its nonperformance, will be set aside on behalf of the defaulting party, or relieved against in any other manner made necessary by the circumstances of the case, on payment of the debt, interest, and costs, if any have accrued, unless by his inequitable conduct he has debarred himself from the remedial right, or unless the remedy is prohibited, under the special circumstances of the case, by some other controlling doctrine of equity." 1 Pomeroy's Equity Jurisprudence, § 450.

To like effect is *Maginnis* v. *Knickerbocker Ice Co.,* 112 Wis. 385 (88 N. W. 300, 69 L. R. A. 833), and a valuable note on the subject of equitable relief against forfeiture of estate.

Prior to coming into equity, Mary H. Couch sued an insurance company and obtained a judgment for the sum of $6500 for removing the building from her lands. She then came into equity and asked the court to cancel the chattel mortgage upon that building, for the reason that it constituted a cloud upon her title. The building was a structure which cost some $60,000, all paid for with other people's money. After collecting or obtaining a valid judgment for the sum of $6,500 for the purpose of demolishing and removing that structure from the premises, she now comes into a court of equity and asserts that the building is hers,

and asks that the chattel mortgage be canceled because it clouds the title to her building.

5. From an understanding of the facts in the case at bar, we necessarily reject the suit of Mary H. Couch. In effect, she asks a court of equity, by forfeiture, to give her a good title to a building worth $60,000, in spite of the fact that she has no money invested in the structure, and notwithstanding there are many creditors who should be paid. She is not in a position to seek equity.

The decree appealed from is modified, and this cause remanded to the court below for the purpose of affording the defendant bank equitable relief against the forfeiture of its lien. The court below is directed to take evidence for the purpose of determining the amount of taxes, rent, assessments, and any other sum or sums of money due, or that in good conscience should be paid to Mary H. Couch by reason of the aforesaid lease; and upon the payment into court, within four months from the date hereof, of such sums, if any, ascertained to be due her, the defendant bank shall have a decree foreclosing its chattel mortgage; otherwise, the claim of the bank shall be barred.

It is ordered that the appellant bank recover costs herein.                                         Modified.

McBride, Bean and Johns, JJ., concur.

Modified December 20, 1921.

## ON PETITION TO MODIFY DECREE.

(202 Pac. 558.)

DECREE MODIFIED.

*Mr. Guy C. H. Corliss, Messrs. Joseph, Haney & Littlefield* and *Mr. S. J. Graham,* for the petition.

*Messrs. Wilbur, Spencer, Beckett & Howell, contra.*

BROWN, J.—6. This matter comes before us on an application in the nature of a petition for rehearing. Statement of facts will be found in the original opinion filed April 12, 1921, and reported *ante,* p. 48 (197 Pac. 284). On appeal, the decree of the lower court in favor of Mary H. Couch and against The Scandinavian-American Bank and others whereby a mortgage lien was annulled, was modified by this court and the cause remanded for the purpose of affording the defendant bank equitable relief.

On September 27, 1913, the plaintiff entered into a lease with the Portland Ice Hippodrome, whereby certain real property was let to the company. Under the terms of that lease the building involved in this litigation was constructed, at a cost of more than $60,000, for the purpose and with the intention of conducting an ice skating-rink. The building, by the terms of the lease, was a chattel, which the lessee bound itself to remove. The Portland Ice Hippodrome executed a mortgage upon the building to The Scandinavian-American Bank, for the purpose of securing numerous creditors. Later, the Hippodrome went into bankruptcy, and the plaintiff, exercising her option contained in said lease, declared the same to

be null and void and of no effect, and, prior to the institution of the suit at bar, brought an action at law against the Portland Ice Hippodrome and the Oregon Surety & Casualty Company for the purpose of recovering rents, taxes and interest, and for damages by reason of failure to remove from her premises the building erected by said Portland Ice Hippodrome. Plaintiff recovered judgment for the total sum of $10,000, about $6,500 of this amount being for damages resulting from failure to remove the building in question. Thereafter, she asserted ownership of that structure and instituted the instant suit, wherein she prayed the court to cancel the chattel mortgage upon the building running to the defendant The Scandinavian-American Bank, for the alleged reason that it constituted a cloud upon her title. The lower court granted plaintiff's prayer.

Upon appeal this court denied plaintiff the relief sought. We did not deem it equitable that a sixty-thousand dollar building should be forfeited to the plaintiff, particularly when she had no money invested therein, and in view of the further fact that the Portland Ice Hippodrome had many unpaid creditors. We modified the decree appealed from and remanded the cause to the court below for the purpose of affording the defendant bank relief against the forfeiture of its lien upon the building, under certain conditions.

It is difficult for us to determine from the record before us whether Edgar J. Bryan deserves equitable relief. It is asserted that his conduct in placing obstacles in the way of the reorganization of the Portland Ice Hippodrome and the redemption of the property was so inequitable that affirmative relief should not be granted him. Upon the other hand, it is

averred that his time, labor and expenditures in caring for the property have been such that in equity and good conscience he is entitled to be reimbursed before appellant should be allowed a decree of foreclosure. After due consideration, this court has decided that evidence may be taken for the purpose of determining what sums, if any, should, in good conscience, be paid to Edgar J. Bryan by reason of the foregoing.

The direction contained in the former opinion is changed to read as follows:

The decree appealed from is modified and this cause remanded to the court below for the purpose of affording the defendant bank equitable relief against the forfeiture of its lien upon the structure. The court below is directed to take evidence for the purpose of determining the amount of taxes, rent, assessments, penalties and interest, and any other sum or sums of money due, or that should be paid, to Mary H. Couch by reason of the aforesaid lease. Against these sums should be charged the whole of the rentals that have been received from Edgar J. Bryan, or from any other source, together with the *net* sum collected by her from the Oregon Surety & Casualty Company as damages for failure to remove said structure from her premises.

These sums having been ascertained, and any balance remaining due Mrs. Couch having been paid by The Scandinavian-American Bank, the bank shall have a decree for the foreclosure of its mortgage. Provided, nevertheless, that Edgar J. Bryan may offer evidence in support of his claim for labor and expenditures in caring for and preserving the property involved in this controversy, for the purpose of enabling the court to determine what sum or sums,

if any, he is justly entitled to be paid before the bank shall have a decree for the foreclosure of its mortgage.

If the bank shall, within twenty days after the filing of the mandate, give notice of its intention to proceed thereunder, the court below shall proceed to take such accounting. If the bank fails to give such notice within the time herein provided, the court shall enter a decree confirming Mrs. Couch's title and forever barring the bank from any relief by reason of its mortgage. If the bank elects to proceed with the accounting, as aforesaid, the court will proceed to take the same, and if, upon the final hearing, any sum is found due to plaintiff, or to Edgar J. Bryan, or both, such sum or sums shall be paid by the bank within twenty days thereafter. The bank shall then have a decree of foreclosure for the amount of its mortgage against the building as a chattel; otherwise, it will be barred of all claim against the property.

MODIFIED.

------

Sustained in part January 31, 1922.

ON OBJECTIONS TO COST BILL.

(203 Pac. 890.)

OBJECTIONS SUSTAINED IN PART.

BROWN, J.—Objection has been made to the allowance of certain items of the cost bill filed by the prevailing party to this suit in equity. The following constitute the objections:

"1. Transcript of testimony, $78, for the reason that this item is not allowable as costs or disbursements.

"2. Abstract on appeal, $112. This item includes an excess of $29, as appellants are only entitled to charge $1 per page, including covers, which would total $83."

We have been cited to the case of *Burdick* v. *Tum-A-Lum Lumber Co.*, 97 Or. 459 (191 Pac. 654), where it was held that the expenditures made by a party in obtaining a transcript of the evidence in the Circuit Court must be taxed in that court and should not be included in the cost bill in the supreme court; also, to the case of *Henderson* v. *Tillamook Hotel Co.*, 76 Or. 379 (148 Pac. 57, 149 Pac. 473), where this court said:

"The Supreme Court will tax as a disbursement the necessary expenses incurred for transcript of the testimony in a suit in equity, when such transcript is prepared for the appeal and after decision of the trial court."

However, since the foregoing decisions were rendered, the legislature of this state has enacted a statute that is controlling and governs in taxing costs. Chapter 322, General Laws of Oregon, 1921, is an act "providing for taxation of costs in the Supreme Court on appeal." Section 1 reads:

"When costs are allowed to the prevailing party on appeal to the Supreme Court the appearance fees, trial fees, attorney fees, as provided by law; the necessary expenses of transcript or abstract, as the law or rules require; the printing required by rule of the court, and the transcript of testimony or other proceedings, when necessarily forming part of the record on appeal, shall be taxed in the Supreme Court as costs of the appeal."

7. In the case at bar, the transcript of the testimony was necessary for the trial of the cause in this court and the cost thereof constitutes a legal disbursement taxable as costs on appeal.

Now, turning to the objection to the charge of $112 for the printing of abstract on appeal: This objection was probably filed in view of Rule 29 of the Supreme Court before its amendment. That rule now reads:

"It shall be the duty of the clerk in taxing costs to allow the prevailing party the actual cost of printing his abstract or brief (for not exceeding forty copies). But he shall not allow exceeding $1.25 a page, including cover, unless for special reasons apparent in the record it shall be otherwise ordered."

The abstract on appeal consists of eighty-three pages, and the prevailing party is entitled to recover costs therefor to the amount of $103.75.

With this exception, costs will be entered in accordance with the items appearing in the cost bill on file herein. OBJECTIONS SUSTAINED IN PART.