Argued and submitted May 18, affirmed as modified and remanded
with instructions August 31, reconsideration denied October 20,
petition for review allowed December 2, 1981 (292 Or 108)

WRIGHT,
*Respondent,*
*v.*
HAZEN INVESTMENTS, INC. et al,
*Defendants,*
HAZEN et al,
*Appellants.*

(No. 16-79-09774, CA 17597)

632 P2d 1328

Terence J. Hammons, Eugene, argued the cause for appellants. With him on the briefs was Hammons & Jensen, Eugene.

David Brewer, Eugene, argued the cause for respondents. With him on the brief was Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

### THORNTON, J.

Plaintiff's complaint sought a declaratory judgment, an injunction, specific performance and damages arising out of a restaurant venture entered into between plaintiff and certain of the defendants. Defendants Hazen[1] appeal from the trial court's decree declaring plaintiff 40% owner of an improved leasehold interest and equipment, including proceeds from any transfer thereof, and liable in the same proportion for debts of maintaining the property. The judgment and decree[2] also enjoined defendants from interfering with plaintiff's right of possession or transferring any interest in the property without plaintiff's approval. Defendants assign as error the trial court's failure:

1)  to require plaintiff to join Texaco, McKay Investment Company (McKay), and H & W Enterprises, Inc., the corporation through which the parties owned and managed the restaurant, as defendants;

2)  to find that plaintiff abandoned her claim to any interest in the leasehold or improvements; and

3)  to hold plaintiff estopped to claim any interest in the leasehold.

The essential facts are as follows:

Defendants Hazen, together with defendant Harmon, own all the shares of defendant Hazen Investments, Inc. In mid-1977, defendants decided to open a fast food restaurant, Choo-Choo's, in an old service station on property leased by Texaco from McKay. On August 22, 1977, the Hazens individually took an assignment of the lease from Texaco. At this point, negotiations between plaintiff and defendants were ongoing, although the venture had not been formally organized. To this end, defendants, plaintiff and Harmon on September 30, 1977, formed a corporation, H & W Enterprises, Inc. (H&W). The same parties, in

---

[1] Defendants Harmon and Hazen Investments, Inc., did not appeal from the judgment. Unless otherwise noted, the term "defendants" as used in this opinion refers to the Hazens.

[2] All parties agree that the case is equitable in nature. We review *de novo.*

order to gain certain tax advantages, simultaneously formed a partnership.[3] Defendants and plaintiff each contributed approximately equal amounts of capital ($5,000) to H&W, and Harmon contributed services. It is undisputed that plaintiff owned 40% of the stock. The purpose of the corporation was to operate the restaurant. Defendants contributed their individual interests in the leasehold, building and equipment valued at roughly $45,000, through Hazen Investment, whose primary business is restaurant equipment supply. Plaintiff contributed approximately the same amount in cash ($45,404) used to renovate the building and pay operating expenses. Harmon again contributed services. The partnership agreement does not reflect the various contributions of the partners. Plaintiff's share in partnership assets and profits was also intended to be 40%.

Some evidence suggests that the leasehold, improvements and equipment were "subleased" to H&W, although there is no written lease to corroborate that conclusion. The corporate minutes indicate that the lease was "given" to H&W, an action purportedly taken by defendants in their individual capacities, rather than as directors of Hazen Investments, the record owner of the leasehold. The same minutes suggest that "equipment, time and materials" were to be "leased" from the partnership.

The restaurant consistently lost money and, in May, 1978, the lease, improvements and equipment were subleased to three brothers named Berkley, who subsequently failed to meet rent payments and were evicted. Defendants, as individuals, sought on two occasions thereafter to transfer the lease and all equipment to other third parties. Defendants took the position that H&W was a defunct entity, that the lease was their property and that plaintiff therefore could not prohibit its transfer. The complaint alleged, and the evidence supports the finding, that H&W was to be liquidated by directive of the shareholders in April, 1978, but no formal liquidation was ever made. *See* ORS 57.526 *et seq.*

The "Final Judgment and Decree," reads in part as follows:

---

[3] The partnership agreement drawn by the Hazens' attorney and partnership tax returns show Hazen Investments, a corporation, as a partner. Testimony at trial, however, showed that the Hazens individually were the partners.

"(1) On Plaintiff's First Cause of Suit, it is hereby declared that *Plaintiff owns forty percent (40%)* of all leasehold improvements, equipment and inventory, and proceeds and replacements thereof, purchased for or used in the operation of a restaurant at 65 Coburg Road, Eugene, Lane County, Oregon, by reason of her interest in a partnership between Plaintiff and the individual Defendants, and documented by an Agreement dated September 30, 1977. Further, it is hereby declared that *Plaintiff holds a forty percent (40%) interest* in all lease rights and obligations under a certain Assignment of Lease dated August 23, 1977, attached to Plaintiff's Complaint as Exhibit "C", *by reason of her interest in the aforesaid partnership, and by reason of her ownership of forty percent (40%) of the stock in H & W Investments, Inc., an Oregon corporation.*

"(2) On Plaintiff's Second Cause of Suit, Defendants, and each of them, are hereby permanently enjoined from interfering with Plaintiff's possession of and access to the real property, leasehold improvements, equipment and inventory described therein, and are hereby permanently enjoined from alienating, transferring, selling, leasing, optioning or otherwise disposing of any of such property *without Plaintiff's prior consent, approval and participation in such disposition."* (Emphasis added.)

■　　　Defendants' first contention is that a decree in this matter should not have been entered in the absence of McKay, Texaco and H&W as parties defendant. With respect to the latter two entities, this argument was not raised below, but failure to join necessary parties may be raised for the first time on appeal. *Stanley, Adm. v. Mueller,* 211 Or 198, 200, 315 P2d 125 (1957). ORS 28.110, part of the declaratory judgment act, requires joinder of "all persons * * * who have or claim any interest which would be affected by the declaration * * *."

■　　　The basic dispute in this case is the extent, if any, to which plaintiff owns an interest in the leasehold, equipment and improvements. Although the complaint and the decree can be read to suggest that plaintiff asked for, and received, a *personal* interest in the lease, we conclude from our examination of the record that the relief she requested and received was a declaration that either the partnership or H&W held the leasehold interest, not the individual defendants, and that defendants were not entitled to deal

with the lease as if it were their exclusive property (as they attempted to do in subleasing to the Berkleys and other third parties). Plaintiff also sought a declaration that she owned a 40% interest in both the partnership and the corporation. The complaint alleges the formation and continued existence of both H&W and the partnership. The decree (which is virtually a copy of the prayer) purports to give plaintiff an interest in the lease "by virtue of" her ownership rights in the partnership or H&W. Had both entities been formally dissolved, it is possible that plaintiff might individually hold some interest in the specific property. An award of such an interest, however, is clearly impossible under the pleadings and proof in this case. We shall return to this topic below when we discuss modification of the decree.

However the relief actually given is characterized, it is clear that any decree which *could* have been awarded must necessarily have involved the question of who holds the leasehold rights. Any declaration therefore could conceivably prejudice H&W as a potential interest holder. Under ORS 28.110, it was a necessary party, and the cause will have to be remanded to join it as a party. *Beers v. Beers, Administratrix,* 204 Or 636, 639, 283 P2d 666 (1955).

This does not end the matter. In *Marx v. Lenske/Krause,* 263 Or 90, 500 P2d 715 (1972), defendant Lenske conveyed property in trust to Krause as trustee, as security for a debt owed to plaintiff. Krause died, and when plaintiff sued to have the property sold to discharge the debt, defendant moved to join Krause's estate and asserted a claim for an alleged sale of part of the trust property for less than market value. The estate cross-claimed, *inter alia,* for other legal services rendered by Krause "and his associates." Defendant moved to join the other partners in Krause's law firm, all of whom filed statements consenting to be bound by the decree in the case. The motion for joinder was denied, and the estate recovered the attorney fees. The court held, 263 Or at 96, that, although Krause's partners were necessary parties who had to be joined, in view of the fact that all issues with which the partners were involved had been fully litigated, the case should be remanded with directions to join the partners and enter a decree granting them the fees requested in their cross-complaint.

We conclude a similar disposition is appropriate here. The decree did not purport to decide whether the partnership or H&W owned the rights in the lease. It necessarily determined, however, that defendants Hazen did in fact contribute the lease to one entity or other (although there was no documentation to corroborate this point). This finding is supported by most of the testimony and by the conduct of the parties. We exercise our authority on *de novo* review and hold under the evidence presented that the leasehold interest ultimately became the property of the corporation. This conclusion is supported by the testimony of both plaintiff's and defendants' accountants, the corporate minutes of H&W's initial organizational meeting and the fact that, while Choo-Choo's was operating, the corporation paid the lease rental directly to McKay.[4]

It follows that H&W has an interest in the lease which would potentially be affected by any decree rendered in this case, and this case must be remanded for joinder of the corporation. However, because all shareholders, directors and officers of H&W were before the court as individual parties, because the decree, as modified below, affirms the corporation's interest (and there is therefore no *adverse* affect) and because the main controversy over whether the lease and equipment were contributed or just "loaned" to the venture has been fully litigated, we remand for joinder of H&W and entry of a decree as discussed below. *See Marx v. Lenske/Krause, supra.*[5]

As mentioned, because H&W owns the lease and the partnership owns the improvements and equipment

---

[4] Defendants and their attorney all maintained that no formal transfer of the lease to either the partnership or H&W was intended. We resolve this conflict in favor of plaintiff because a) the decree in this case implies that the trial court found plaintiff more credible than defendants (and we are in agreement with that assessment) and b) to hold otherwise would mean that plaintiff contributed $50,000 in cash to the venture and defendants *actually* contributed nothing. We further note that a great deal of confusion existed between the parties and their advisors as to the exact status of the lease, improvements and equipment, which was engendered in part by defendants' apparent disregard (even in their dealings through Hazen Investment) of the formalities of corporate operation.

[5] *Marx* involved former ORS 13.110, which sets forth a standard for compulsory joinder similar, but not identical, to ORS 28.110 (the Declaratory Judgment Act). The principles are the same, however, and the difference in wording does not make *Marx* inapplicable.

which it leased to H&W, plaintiff individually owns no interest[6] in particular property dehors her interest in those two organizations. Plaintiff recognized that fact and argued to the trial court in closing:

> "Again, to say that these parties cannot directly cooperate to dispose of the assets, to try to salvage all of their investment at this point, does not however mean that they can't do it indirectly as part of the windup of this venture through their respective attorneys and with an order of this Court. It is not the plaintiff's desire to destroy any good deals, just to receive her fair share of the proceeds and to be assured that such transactions disposing of the assets are in fact fair to all concerned. It's this right that she's been denied of consistently in this case.

> "Now, the plaintiff is only asking her right in the ground lease be declared and that she not be excluded in the termination of the business, that her investment may be salvaged so far as possible. * * *"

To the extent the decree can be read to give plaintiff some personal interest in the property, it is erroneous. Further, although injunctive relief is appropriate against the individual defendants to restrain them from further attempts to transfer these assets, to the extent the decree implies that plaintiff has some individual right, beyond her rights as partner and shareholder, to prevent any conveyance, it is similarly in error. The decree is modified to read:

> "It is hereby declared on plaintiff's first cause of suit that she is owner of a 40% interest in the partnership between plaintiff and the individual defendants documented by an agreement signed September 30, 1977, and a 40% shareholder in H & W Investments, Inc., an Oregon corporation. The partnership owns all leasehold improvements, equipment, inventory and proceeds from the sale or disposition thereof, purchased for or used in the operation of a restaurant at 65 Coburg Road, Eugene, Lane County, Oregon. H & W Investments, Inc. holds the leasehold interest in that property.

> "On plaintiff's second cause of suit, defendants, and each of them, other than H & W Investments, Inc., are hereby permanently enjoined from attempting to alienate,

---

[6] Technically, plaintiff does have an interest in the improvements and equipment by reason of her interest in the partnership. Such right is in common with other partners and subject to restrictions of use, attachment, alienation, etc. ORS 68.420. Plaintiff thus has no absolute right to deal individually with any of this property.

transfer, sell, lease, option or otherwise dispose of any of the aforementioned property outside of the transaction of business by the partnership or H & W Investments, Inc."

The lease between McKay and Texaco provided that Texaco would remain liable for rent, but could freely assign or sub-lease the property. Thus, McKay has no concern with who ultimately owns an interest in the leasehold rights and is not a necessary party. Under the Texaco - Hazen Investments lease, Hazen Investments remains liable for rent after assigning its interest and was also required to obtain Texaco's prior consent before assigning or sub-leasing. No such approval was obtained before the transfer of the lease to the partnership because, as one defendant stated, it was not needed.[7] There is nothing implicit in the resolution of the issues in this lawsuit which forecloses Texaco from taking any steps it is otherwise empowered to take under the lease in the event it does not approve of the conveyance to H&W without its prior approval. Therefore, its rights are not (and could not have been) affected in any real sense by the decree here, and we conclude it is not necessary to join it as a party.

■ ■ In support of their contention that plaintiff abandoned any right she had in the leasehold, defendants point to three "facts": 1) statements plaintiff allegedly made at a meeting on August 6, 1979, at a time when defendants were paying the lease after the deal with the Berkleys fell through in June of that year, to the effect that she did not want to pay 40% of rent; 2) a general denial she filed in an action for fraudulent representation brought by third parties to whom defendants had attempted to assign the leasehold and sell the restaurant property; and 3) plaintiff's failure to tender any rent payments prior to filing of this lawsuit. To constitute an abandonment there must be a clear voluntary act showing an intent to terminate ownership but not to vest title in another person. *Rich v. Runyon,* 52 Or App 107, 112-13, 627 P2d 1265 (1981). The evidence does not disclose such an intent in this case.

---

[7] Defendants did request permission to sub-lease to the Berkleys in May, 1978, to which Texaco responded:

"In reply to your letter * * *, Texaco has no objections to your subletting the subject property. As stated in your letter, the subleasing of the property will not alter the terms of [the Texaco-Hazen Investments assignment] * * *."

With respect to the alleged statements, plaintiff's position is that she may have made similar statements but was merely voicing her concern about her $50,000 investment and did not want to be involved in any more losing ventures. We do not find this evidence to show abandonment. On the second point, plaintiff states that the denial was directed at the allegation in the third parties' first complaint that she, as a named defendant, had made fraudulent representations. The amended complaint, also in evidence, shows that plaintiff was subsequently dismissed as a party. It is impossible to infer any intent to abandon from plaintiff's general denial that she made fraudulent representations. Finally, the fact that she did not pay rent or tender her portion thereof to defendants is explained by the fact that plaintiff believed defendants had mismanaged the venture and the dealings with the Berkleys and were therefore responsible for the partnership's liability for rent. She was told by defendants' attorney that, as a partner, she would be liable for a share of the rent, and she recognized that obligation, but declined to pay until a new agreement reflecting the respective interests of the parties in the lease and equipment was drawn. We find plaintiff did not abandon her interest.

■    Defendants' final contention is that, by virtue of her general denial in the fraud litigation referred to above, plaintiff is estopped to take a contrary position in the current case *(i.e.,* that she *does have* an interest in the lease). *Couch v. Scandinavian-American Bank et al.,* 103 Or 48, 57-8, 197 P 284, 202 P 558, 203 P 890 (1922). The general denial, as we have noted, was directed primarily against the allegation that she made fraudulent representations. She could have admitted she had an interest in the lease and denied liability for the representations, and, in this sense, the answer could have been more precisely pleaded. Because it appears, however, that plaintiff was properly dismissed from the action for a reason other than the fact that she had no interest in the lease, we conclude that that such a dismissal cannot be viewed as "successful maintenance" of a legal position, so as to estop her from seeking a declaration of the extent of her interest in this case.

Affirmed as modified and remanded with instructions.