Argued February 13, reversed and remanded April 17, objections to cost bill overruled May 15, 1923.

# BELL v. HANOVER FIRE INSURANCE COMPANY.

(214 Pac. 340; 215 Pac. 171.)

**Insurance—Interest Runs on Amount Due Under Policies from Time Payable, and not from Date of Policy.**

1. In action on policies on automobile trucks on claim of loss by concealment or conversion, it was error to award interest on the amount due under the policies from the date of the issuance thereof; interest running only from the time the policies were payable according to their terms.

**Chattel Mortgages—Contract Held to Evidence a Debt, and not a Sale.**

2. Where a truck-selling company seeking a loan exhibited two trucks to a broker who made a contract with the company reciting that the company agreed to pay the broker $6,500, on which the broker agreed to sell the company two trucks, that the property so intrusted was the property of the broker until 'such sale, the company to keep it insured in his favor, and plaintiff, an investor in motor-car securities, advanced the money desired, taking assignment of contract and insurance policies, the relation was that of debtor and creditor, and not that of vendor and vendee.

**Insurance—Insurer may not Invoke Forfeiture for Misstatement as to Sole Ownership Under Policies Showing on Their Face That Others had Interest.**

3. Where policies on automobile trucks which were issued to a dealer and assigned to plaintiff, who had made a loan to the dealer, showed by indorsements and other matters on the face of the policies that others than plaintiff had an interest in the ownership of the motor-trucks insured, insurer could not invoke forfeiture under a representation that plaintiff was sole and unconditional owner.

**Insurance—Evidence Held Admissible to Show That Motor-cars Lost or Converted were not the Motor-cars Covered by Policy.**

4. In an action on a policy of insurance on motor-trucks issued to a dealer and assigned by it through a broker to plaintiff along with a note evidencing a loan to the dealer with the trucks as security, in which defendant insurer claimed that plaintiff had been imposed on by the dealer concerning the identity and ownership of the cars described and alleged to have been lost or converted,

---

2. Mortgage or instrument given as security as breach of condition as to sole and unconditional ownership, see note in L. R. A. 1915D, 812.

3. Knowledge by insurer of existing facts as waiver of condition in policy, see notes in 2 Ann. Cas. 280; 18 Ann. Cas. 686.

107 Or.—33

and that one of the trucks insured had never been west of Chicago and the other had been shipped to Washington, and never owned by the plaintiff, or the dealer or broker, it was error to reject evidence offered by defendant to prove by process of elimination by accounting for all of the trucks that had come into possession of the dealer that it had never owned the trucks described.

### ON OBJECTIONS TO COST BILL.

**Costs—Premium on Appeal Bond Taxable in Supreme Court.**

5. Under Section 6438, subd. 5, Or. L., authorizing the person entitled to recover disbursements in actions and proceedings to tax the sum paid for execution of a bond, the premium paid on appeal bond was taxable in the Supreme Court.

**Costs—Cost of Transcript of Evidence Taxable in Supreme Court.**

6. Under Section 931, Or. L., providing that reporter's fee for making the transcript of the evidence shall be taxed as other costs, the cost of the transcript is taxable in the Supreme Court.

From Multnomah: W. N. GATENS, Judge.

Department 2.

This is an action at law instituted by the plaintiff, Seymour H. Bell, against Hanover Fire Insurance Company, a corporation of the State of New York, for the purpose of enforcing payment of two policies in the sum of $6,500, by reason of the disposal or concealment of two "Diamond T" trucks by the alleged vendee, the "Diamond T Truck Sales Agency of Oregon."

From the record before us, it appears that the Diamond T Truck Sales Agency was a corporation engaged in dealing in automobile trucks, and that it was managed by one A. Junge. Its usual course of business was to buy its trucks from the manufacturers, and to sell to the users of trucks. In many instances sales were made conditionally and title reserved by the Diamond T Truck Sales Agency until full payment of the purchase price was made.

At the time that the plaintiff acquired his interest in the trucks in controversy, Frank L. Waller and Ben F. Walling were dealers and brokers in motor-

car securities. Plaintiff is a capitalist who invests his own money, and he deals largely in "automobile paper."

In the early part of 1920, A. Junge, manager of the Diamond T Truck Sales Agency of Oregon, applied to the above-named brokers for a loan of $6,500, and, for the purpose of securing the proposed loan, exhibited to the brokers, according to their testimony, two Diamond T trucks, bearing metallic number plates securely attached to the dashboards of the respective trucks, on which appeared the following: "Diamond T Truck Number 8078, 2 ton, model G 3, 1920," and "Diamond T Truck Number 5131, 3½ ton, model L B 4, 1920." A third truck was exhibited to the brokers, but it is not involved in this lawsuit. Junge signed and delivered to Waller an instrument in writing, which was offered and received in evidence, marked exhibit "A" for the purpose of identification, and which reads as follows:

"$6500.00        Portland, Oregon, January 16, 1920.

"For value received, we promise to pay to Frank L. Waller, or order, Sixty-five Hundred & 00/100 Dollars in Gold Coin of the United States of America, with interest thereon in like Gold Coin at the rate of eight (8%) per cent per annum from date until paid. Payable in one installment of not less than Six Thousand Five Hundred Dollars in any one payment, together with the full amount of interest due on this note at time of payment of each installment. * *

"This contract is given upon and for the sole consideration that Frank L. Waller, hereinafter referred to as the second party, has agreed that upon the payment of the sum above mentioned, as above set forth, time being of the essence hereof, the second party will sell, transfer and deliver unto the undersigned, the following described personal property to wit:

"3 Diamond T trucks, one 3½ ton, number 5131, one 2 ton, number 8078, one 2 ton, number 12018, which said property has been intrusted to the care of the undersigned.

"It is expressly agreed that said property so intrusted is the property of the second party and shall remain so until the second party shall make the aforesaid sale and transfer after all payments shall have been made as above provided.

"The undersigned hereby agrees to keep said property in good repair and condition, and to take the best care of the same, keeping it insured in favor of the said second party or his assigns, in a sum sufficient to cover his or their interest therein at all times.

"In case of default in the payment of any amount due, as above provided, or in case the undersigned shall part with the possession of said personal property, the said second party, or his assigns, shall have the right, at his or their option, to the immediate possession thereof, and to retain all sums previously paid, as the agreed and reasonable rental for the use of said personal property by the undersigned, and this contract shall then terminate and end upon the retaking possession of said personal property by the said second party or his assigns. It is, however, understood that upon the failure of the undersigned to make said payments promptly, as hereinbefore provided, the second party, or his assigns, shall have the option as to whether he or they shall receive back said personal property, and shall have the right and power to determine whether he or they shall insist upon the payment of the full sum as hereinbefore provided, and to decline to receive back said personal property, in which event the undersigned is to be liable for the full sum hereinbefore agreed to be paid.

"Diamond T. Truck Sales Agency of Oregon, Inc.,

"A. Junge,
Pres."

The brokers obtained from the plaintiff $6,500 upon the above contract, and paid it over to Junge.

The following indorsement appears upon the instrument above set out:

"For value received I hereby guarantee the payment of the principal of within note and the interest and attorney's fees therein provided for, at maturity, and at any time thereafter, until paid, and I hereby waive demand of payment, presentation for payment, notice of nonpayment, and notice of protest.

"A. JUNGE.
"FRANK WALLER.
"BEN F. WALLING."

The plaintiff sued the defendant, claiming that on March 27, 1920, "the said Diamond T Truck Sales Agency of Oregon disposed of or concealed said trucks and plaintiff has been unable to regain possession thereof." It further avers proof of loss, and failure of defendant to make payment.

Upon trial a verdict for the full sum claimed was rendered, together with interest from the date of the issuance of the policy.

From the judgment entered thereon, the defendant appeals to this court, assigning numerous errors.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Veazie & Veazie*, with an oral argument by *Mr. J. C. Veazie.*

For respondent there was a brief and oral arguments by *Mr. Leon W. Behrman* and *Mr. Maurice W. Seitz.*

BROWN, J.—1. Manifestly, it was error for the court to award judgment bearing interest from the

date of the issuance of the policies. From the plaintiff's case, the loss did not occur until March 27, 1920. Proof of loss was made at a later date. A valid provision of each policy reads:

"This company shall have sixty days after receipt of such sworn itemized statement of claim in which to verify, investigate such claim, and (or) make payment * * ."

The defendant Hanover Fire Insurance Company was liable to the plaintiff, if at all, for interest upon the amount due under the terms of the policies from the time they were payable, and not from the date of the policies, nor from the date of the alleged conversion of the trucks: 5 Joyce, Law of Insurance (2 ed.), § 3458. The author there states the rule sustained by ample authority to be that—

"The insurer is liable for interest upon the face of the policy from the time it was payable, not from the date of the fire; after the expiration of the stipulated sixty days from proof of the notice, and not from the time the loss is adjusted. If a time is fixed for payment, from that time; * * if the company waives the right to pay within the time fixed by denying all liability under the policy, interest will run from the date of loss."

It is asserted that the interest of the plaintiff in the property is not that of unconditional and sole ownership, and that by reason thereof each policy is null and void. It is claimed that the plaintiff was but the mortgagee of the property; that the only interest that Bell ever had in the trucks was that of such mortgagee; that the property was transferred to him only as security for the sum of $6,500 loaned by him to the Diamond T Truck Sales Agency of Oregon.

We have set out in the statement the writing evidencing their transaction.

A well-established principle of law is that—

"When an absolute conveyance has been made upon an application for a loan, and an agreement is made to reconvey upon payment of the money advanced, as a general rule the transaction is adjudged to constitute a mortgage. In each case the purpose of the grantor was in the beginning to borrow money; and unless a change be shown in his intentions, it is presumed that any use he may have made of his real estate in connection with it was merely as a pledge to secure a loan.

"The parties having originally met upon the footing of borrowing and lending, although a different consideration be recited in the deed, it will be considered a mortgage until it be shown that the parties afterward bargained for the property independently of the loan." 1 Jones on Mortgages (7 ed.), § 266.

2, 3. In the case at bar, the evidence establishes the relation of debtor and creditor, and not that of vendor and vendee. The plaintiff was neither buying nor selling automobile trucks. He was investing his funds in "automobile paper." However, under the facts as they exist, the policies should not be held null and void on the ground that Seymour H. Bell was not the unconditional and sole owner of the two trucks described in the complaint on file herein.

The two insurance policies forming the basis of this action were procured from the defendant on January 17, 1920, and were issued to Diamond T Truck Sales Agency of Oregon, as the assured. Upon the face of the policies, it appears that neither of the automobiles was fully paid for. On the same day a "conditional sales contract endorsement" was

issued by the defendant Hanover Fire Insurance
Company to Frank L. Waller as vendor, and naming
the Diamond T Truck Sales Agency of Oregon as
vendee. On January 19, 1920, a "conditional sales
contract endorsement" was attached to each of the
policies, wherein Seymour H. Bell appears as vendor
and Diamond T Truck Sales Agency of Oregon, as
vendee. The conditions contained in the indorse-
ments are the same, and the language is identical ex-
cept as to names and dates. The indorsement upon
one of the policies to plaintiff reads as follows:

"ENDORSEMENT—Attached · to and forming
part of Policy No. —— issued by Hanover Fire In-
surance Company to —— Diamond T Truck Sales
Agency of Oregon.

"It is understood that the automobile described in
this policy has been delivered by the said Seymour
H. Bell, vendor, to Diamond T Truck Sales Agency
of Oregon, vendee, under a conditional sale contract
under which the unpaid balance is $——, a copy of
which shall be furnished to the company by the said
vendor on demand.

"In consideration of Two and no-100 included in
premium dollars ($2.00) additional premium, this
company, subject to all the terms and conditions
stated herein, and subject to all the terms and con-
ditions of said policy (in so far as same do not con-
flict with the specific undertaking and conditions of
this endorsement) also insures the said vendor
against all direct loss or damage which he may sus-
tain caused by the fraudulent concealment or dis-
posal of said automobile by the vendee, not exceeding
the amount named in said policy nor the actual cash
value of the said automobile at the time of the said
concealment or disposal, nor exceeding two-thirds of
the contract purchase price thereof, and in no event
to exceed the amount of the unpaid installments of
the purchase price of said automobile, exclusive of

any interest thereon after default in the punctual payment of any thereof.

"Provided, however, that upon claim being made to this company for loss under this endorsement, the said vendor shall procure a warrant for the arrest of said vendee on a charge of larceny or embezzlement of said automobile, and shall render such assistance (not pecuniary) as may be required by this company in the prosecution of such charge. It shall also be the duty of said vendor in such case to make every reasonable effort to locate said automobile and, if located, to immediately take possession thereof, or upon the request of this company to institute legal proceedings to recover possession thereof.

"Provided, further, that the vendor shall, upon becoming aware of any act or omission on the part of the vendee which may be made the basis of a claim hereunder, forthwith give written notice to this company, either by registered mail or by telegram addressed to this company at its offices in the city of San Francisco, and the vendor shall, within ten days after the giving of such notice, file with this company, signed and sworn statement showing items and dates of all amounts due from the vendee and setting forth all facts known by the vendor or believed by the vendor to exist concerning such act or omission on the part of the vendee, the dates thereof, the physical condition and actual cash value of such automobile at the time of such disposal or concealment, and the last known address of the vendee. This company shall have sixty days after receipt of such sworn itemized statement of claim in which to verify, investigate such claim, and (or) make payment, during which time no legal proceedings shall be brought against this company; and that upon the payment of any loss hereunder, the vendee shall assign and deliver to this company any and all conditional sale contracts, notes, mortgages or lease contracts covering the automobile which may be the subject of such claim, and this company shall be subrogated to all of the rights of the vendor thereunder.

"Any settlement made by or for the vendor, with
or on account of the vendee, for any loss claimed
under this indorsement, without the written consent
of this company, shall render this indorsement null
and void.

"It is warranted that the vendor has had no notice
or knowledge that the vendee is unreliable, dishonest,
or unworthy of confidence.

"Any provisions of the policy to the contrary not-
withstanding, it is understood that the premium pro-
vided for in this indorsement is a minimum charge
to be retained in full by the company, without regard
to the length of time the insurance has been in force,
except that when cancelled by this company it shall
retain only the *pro rata* premium.

"All other conditions, stipulations, warranties, and
clauses of the policy remain unchanged."

In the case at bar, the face of the policies showed
that others than plaintiff had an interest in the own-
ership of each truck. From the indorsements at-
tached to and made a part of each policy, the
insurance company knew that plaintiff was not the
sole and unconditional owner of the trucks. Hence,
it is not in a position to invoke a forfeiture.

4. The most serious question presented by the
record lies in the rejection of certain testimony prof-
fered upon the part of the defendant. It claimed
that the plaintiff had been imposed upon by mis-
representations made by the manager of the corpora-
tion concerning the ownership of the cars described
in the record. The defendant asserts that one of the
trucks had never been west of Chicago, and that the
other had been shipped to, and was owned in, the
State of Washington.

In this case there has been no attempt to establish
any mistake, mutual or otherwise, relating to a mis-
description of the insured property.

The plaintiff alleged that he was the owner of two certain trucks which he described in his complaint as "Diamond T Truck 3½ Ton, 1920 Model, Factory Number 5131, Model L B 4," and "Diamond T Truck 2 Ton, 1920 Model, Factory Number 8078, Model G 3," and that it was these two trucks that were covered by the defendant in its insurance policies which are the basis of this action. The defendant took issue and denied that these trucks were ever owned by the plaintiff, the corporation, or Waller; or that any of them ever possessed the trucks described in the complaint. The plaintiff offered some testimony tending to show that the particular trucks described in the complaint were in possession of the Diamond T Truck Sales Agency of Oregon. The defendant adduced evidence tending to show that the corporation never owned the two trucks described in the insurance policies and in the complaint; that such trucks were never in the State of Oregon and certainly were never owned by Junge or his corporation. It is averred that on March 27, 1920, and the evidence shows that upon that date, trucks in possession of the Diamond T Truck Sales Agency were removed from the garage where they had been kept. By process of elimination, the defendant attempted to prove, by accounting for all of the trucks that had come into the possession of the Diamond T Truck Sales Agency, that at no time did it possess or own the trucks described in the complaint.

The ownership and possession of these two trucks was an issue in this case, and the rejection of the testimony constitutes reversible error. It is so ordered.

                                        REVERSED.

McBRIDE, C. J., and BEAN and McCOURT, JJ., concur.

Objections to cost bill overruled May 15, 1923.

### On Objections to Cost Bill.

(215 Pac. 171.)

*Mr. Maurice W. Seitz* and *Mr. Leon W. Behrman,* for the objections.

*Messrs. Veazie & Veazie, contra.*

PER CURIAM.—The following objections have been made to certain items designated in the cost bill filed by the prevailing party to this action at law:

"Comes now the respondent, Seymour H. Bell, and objects to the cost bill filed herein, for the following reasons:

"1. The item of $130.72, for an appeal bond, is not properly taxable in this court, if taxable at all.

"2. That the item of $81.50 for transcript of testimony is not taxable in this court."

5. Paragraph 5, Section 25-a, Chapter 203, General Laws of Oregon, 1917, codified as subdivision 5, Section 6438, Or. L., reads:

"In all actions and proceedings a party entitled to recover disbursements therein shall be allowed and may tax and recover such sum paid a person or company for executing any bond, recognizance, undertaking, stipulation, or other obligation therein, not exceeding, however, one per cent on the amount of such bond, recognizance, undertaking, stipulation or other obligation during each year the same has been in force."

6. Now, as regards the charge for transcript of testimony: It is provided by Section 931, Oregon Laws, that the fees of the official reporter for making the transcript of the evidence "shall be fifteen cents per

folio of one hundred words, and shall be paid forthwith by the parties or party for whose benefit the same is ordered, and, when paid, shall be taxed as other costs in the case.''

It is enacted by Chapter 322, General Laws of Oregon, 1921, that—

''When costs are allowed to the.prevailing party on appeal to the supreme court, the appearance fees, trial fees, attorney fees, as provided by law; the necessary expenses of transcript or abstract, as the law or rules require; the printing required by rule of the court, and the transcript of testimony or other proceedings, when necessarily forming part of the record on appeal, shall be taxed in the supreme court as costs of the appeal.''

It follows that the objections made to the cost bill must be, and are, overruled: See *In re Will of Pittock,* 102 Or. 196 (199 Pac. 633, 202 Pac. 216, 17 A. L. R. 218); *Couch* v. *Scandinavian-American Bank et al.,* 103 Or. 66 (197 Pac. 284, 202 Pac. 558, 203 Pac. 891); *Livesley et al.* v. *Strauss,* 104 Or. 356 (207 Pac. 1095); *Fischer* v. *Bayer,* 108 Or. 311 (211 Pac. 162).     OBJECTIONS TO COST BILL OVERRULED.