FEDERAL BUILDING COMPANY *v.* FORD MOTOR COMPANY ET AL.

[No. 14,998. Filed January 7, 1936.]

*L. H. Dunten,* for appellant.

*Luke H. Wrigley,* for appellees.

DUDINE, J.—This was an action in replevin for the recovery of two Ford trucks and two Ford automobiles instituted by appellee Ford Motor Company against appellee Alec M. Rennie, a Ford dealer. Appellant, a holder of "finance papers" on the motor vehicles, intervened, claiming ownership of them.

The only error assigned on appeal being that the trial court erred in its conclusions of law, it is not necessary that we discuss the pleadings, nor the evidence.

The cause was tried by the court, without a jury, and the court made a special finding of facts, which included the following, in effect:

On August 3, 1931, appellee Alec M. Rennie purchased two automobiles from the Ford Motor Company, who

will hereafter be referred to as "appellee." The automobiles were "to be paid for in cash upon delivery." On August 6, 1931, Rennie bought two automobile trucks from appellee on the same terms. On each occasion Rennie gave appellee his check in payment for the motor vehicles. Rennie, as he well knew, was hopelessly insolvent at the time, and he concealed this fact from appellee. The checks, as Rennie well knew, were worthless, because he had no funds in the banks against which the checks were drawn. Rennie intended *not* to pay appellee for said vehicles. Appellee accepted the checks in good faith, without knowledge of Rennie's insolvency, and believing the checks to be good, appellee delivered the automobiles and trucks to Rennie, giving him "sales orders" covering each vehicle, which sales orders were marked "paid."

At that time, and for several years prior thereto appellant was engaged in the business of "advancing money to dealers in motor vehicles to assist them in financing the motor vehicles bought by them for sale to their customers," and had been doing that for Rennie.

On the same dates that Rennie purchased said vehicles from appellee, he signed and delivered to appellant "bills of sale" covering said motor vehicles, "in consideration of" the total sum of $1,400.00 "paid" Rennie by appellant on all of said vehicles; and "contemporaneously" with such execution of said "bills of sale," Rennie signed and delivered to appellant "conditional sales agreements" covering said vehicles, by the terms of which "conditional sales agreements" appellant agreed to sell said vehicles to Rennie upon the payment to appellant of $1,400.00, the total sum of the stated purchase prices of said vehicles—plus interest from date.

Neither of said "bills of sale" nor "conditional sales agreements" was recorded. The "conditional agreements" provided "That possession of said chattels shall

be and remain in the buyer (Rennie) at the sales room of said buyer . . . (for the sole use of displaying them) . . . for sale at retail in the regular course of trade at said place . . ."

Appellant relied upon said sales orders stamped "Paid," and "induced thereby parted with said $1,400.00 . . ."

Appellee presented the checks for payment in due course, and the checks were protested for non-payment on account of no funds in the banks against which they were drawn.

On August 21, 1931, appellee "rescinded the contract for the sale, to Rennie, of said motor vehicles, and notified said Rennie, who then had the possession . . . of each and all of said motor vehicles, of such rescission and demanded of said Rennie the possession thereof, which was by said Rennie refused."

Thereafter this suit was instituted, and a writ of replevin covering said motor vehicles was issued, and said vehicles were seized by the sheriff by virtue of said writ, whereupon a replevin bond, signed by Rennie as principal, and by a surety company as surety, was procured by appellant and accepted by the sheriff, and appellant, knowing that appellee "was claiming the ownership of said motor vehicles and had brought this suit to recover possession thereof, took possession of each and all of said motor vehicles . . . (from the sheriff, and) sold the same and converted to proceeds of such sale to its own use . . ."

The conclusions of law stated by the court were not numbered. They were, in effect, as follows: Appellee should recover possession of the motor vehicles and damages in the sum of $146.35 for detention thereof, and if delivery of said property can not be made to appellee, then appellee should recover judgment against appellant and Rennie in the sum of $1,722.88, the aggre-

gate value of said property, together with said damages for detention. Appellant excepted to the conclusions of law, and judgment was rendered in accordance with said conclusions.

As we have heretofore stated, the sole error relied upon for reversal is alleged error in the court's conclusions of law.

All of appellant's contentions are based on the assumption that the special finding of facts shows that appellant was a "bona fide purchaser" of the motor vehicles. Its contentions may properly be summarized as follows: Appellee Ford Motor Company, having delivered to Rennie the motor vehicles and the sales orders stamped "paid," and appellant having relied upon said sales orders, and upon the fact that Rennie had possession of the motor vehicles when it, appellant, purchased them from Rennie, in good faith, and without knowledge of the fraud practiced upon the Ford Motor Company by Rennie, the Ford Motor Company is precluded from asserting its claim of ownership against appellant.

Appellant says in its brief that this appeal presents the simple proposition, "Is appellant an innocent purchased for value and without notice so as to be protected against the claims of the appellee Ford Motor Company?"

We think *Southern Finance Co.* v. *Mercantile Discount Corp.* (1923), 80 Ind. App. 436, 141 N. E. 250, is controlling, with reference to that question. The facts in that case, as stated in the opinion, are as follows (p. 437):

> "Appellee is a corporation, engaged in buying and selling automobiles and commercial paper, with its principal office at Indianapolis, Indiana. Appellant is a finance corporation located at Evansville, Indiana. On March 18, 1920, one Peter H. Overbay was the owner of a Liberty automobile of the value of $1,800, which he had purchased a few days be-

fore of the Dunbar Motor Car Company. On that date he parked the same in the street in front of appellee's place of business in Indianapolis, and while it was so located, he executed a bill of sale therefor to appellee, which recited a consideration of $1,259, and also executed to it a promissory note for $1,259, containing a conditional sale contract for the same automobile, which provided, among other things, that it should remain the property of appellee until the note was fully paid. Both of said instruments were executed at substantially the same time, pursuant to an agreement then existing between the parties, that appellee would resell the automobile to said Overbay in the manner described. Appellee at the time gave said Overbay its check for $1,200, but did not take physical possession of the automobile at any time. After the transaction stated, Overbay drove the car away. On the date mentioned, Overbay was engaged in the automobile business in Vincennes, Indiana, and had previously arranged with appellee to advance his firm 80% of the wholesale price of cars on their floor. The execution of said instruments was not acknowledged before any officer, and were not recorded. On June 30, 1921, said Overbay executed his promissory note to the firm of Overbay and Overbay for the sum of $1,282.55, and, to secure the same, executed to said firm a chattel mortgage on said automobile. The execution of said mortgage was properly acknowledged, and the same was duly recorded within ten days thereafter. On the same day said note and mortgage were duly assigned to appellant. In addition to the foregoing facts we may assume, that appellant has converted the automobile to its own use, as charged in the complaint, since it has not challenged the court's finding in that regard."

In that case appellee brought suit against appellant for damages for conversion of the automobile and re-covered a judgment for $757.80. Appellant appealed, and the judgment was reversed because "it does (did) not appear (in the record) that appellee has (had) any interest in the automobile which is (was) superior to

the rights of appellant, acquired through its chattel mortgage." (Quotations from said case.)

In discussing that question this court said (p. 438):

"We recognize the law to be, that where the owner of personal property sells and delivers it to a purchaser, *not for the purpose of consumption or resale,* at an agreed price payable at a future day, upon the express condition that the title to such property shall remain in the vendor thereof, until the purchase price is fully paid, that a conditional contract of sale exists which prevents the vendee of such property, prior to such payment, from selling or encumbering the property in such manner as to defeat the title of the original owner and vendor. (Citing authorities.) *But, before there can be a valid conditional sale contract, the one assuming to occupy the relation of owner and vendor must be such in fact, and the one assuming to occupy the relation of vendee of the owner must in truth acquire his title through the latter.* Paper transfers of title are of no consequence, where corresponding facts do not exist, nor will apparent momentary ownership, for the purpose of an instantaneous resale, suffice. Mere forms will not be allowed to overshadow the substance, and hence constructive sales and resales will be disregarded if, in fact, only the relation of debtor and creditor exists." (Citing authorities.) (Our italics.)

The court having reviewed the facts of that case in the light of said principles, said (p. 441):

"The only conclusion to be drawn from these facts is, that appellee never became the *bona fide* owner of the automobile, and hence was not a *bona fide* vendor thereof, and that, not being a *bona fide* owner and vendor, the alleged conditional sale contract was without a sufficient basis to render it valid as such." See also *Bell* v. *Hanover Fire Ins. Co.* (1923), 107 Ore. 513, 214 Pac. 340; *Joseph* v. *Winakur* (1929), 30 F. (2d) 510, and authorities cited 43 A. L. R. 556.

In the case before us the respective "bills of sale" and "conditional sales agreements" were signed contempo-

raneously; appellant did not acquire actual possession, on the contrary the "conditional sales agreements" provided that possession of the vehicles shall be and remain in Rennie, the purported seller; furthermore the agreements provided that said vehicles were to remain the the possession of Rennie for the use of displaying them "for sale at retail *in the regular course of trade*" at Rennie's place of business. Said last provision indicates that it was understood that appellant was not to become the *real* owner of the vehicles.

We think the transaction between Rennie and appellant constituted, in effect, mere "paper transfers of titles," and that the transactions effected a debtor-creditor relationship between them, that they were not bona fide sales of the vehicles.

Since Rennie did not effectually sell the vehicles before the Ford Motor Company rescinded its contract of sale to Rennie, the rescission of the contract caused the title of the Ford Motor Company to be unaffected by the later transactions.

Appellant calls our attention to the fact that said decision was rendered prior to the adoption of the Uniform Sales Act, by our legislature, and appellant contends that said Act, particularly sec. 58-208, Burns 1933 ". . . in and of itself . . . completes the title to the goods in appellant as against the Ford Motor Company." In view of the fact that the transactions between Rennie and appellant were not "sales," the Uniform Sales Act is not applicable to said transactions.

Appellant also contends that appellant and appellee, both being "innocent," but appellee having not only delivered the vehicles to Rennie, but having also given him the invoices marked "Paid," appellee thereby made possible Rennie's inducement to appellant that appellant advance said money to him,

294

and therefore appellee should suffer the loss, as against appellant. Citing *Hoham* v. *Aukerman-Tuesburg Motors, Inc.* (1922), 77 Ind. App. 316, 133 N. E. 507.

The rule of law contended for by appellant is applicable only between parties whose titles are of the same quality. In the instant case appellant did not acquire a legal title, it acquired only an equity in the vehicles.

No reversible error having been shown, the judgment is affirmed.

Wood, J., not participating.